EDWARD PASSERO *et al.*, Plaintiffs-Appellants, v. ALLSTATE INSUR-ANCE COMPANY, Defendant-Appellee.

First District (5th Division)   No. 1—88—3116

Opinion filed March 30, 1990.—Rehearing denied May 11, 1990.

Edward V. Hanrahan, of Oak Park, for appellants.

Vincent P. Cook and Peter W. Schoonmaker, both of Condon, Cook & Roche, of Chicago, for appellee.

PRESIDING JUSTICE COCCIA delivered the opinion of the court:

I

On June 12, 1987, plaintiffs Edward and Elizabeth Passero filed a complaint, alleging that defendant Allstate Insurance Company unreasonably and vexatiously refused to pay a claim for insured personal

property stolen from their home. The circuit court entered summary judgment in Allstate's favor, and the Passeros have appealed to this court. We affirm for the following reasons.

## II

The Passeros' insurance policy obligated them to take the following steps after a loss:

"3. What You Must Do After a Loss.

In the event of a loss to property that this insurance may cover, you must do the following things: ***

(d) Give us all original bills, invoices and other vouchers, or certified copies, which we may reasonably request ***;
***

(f) Show the damaged property whenever we reasonably ask you to. You must answer questions about it at our request;

(g) Within 60 days after the loss, give us a signed, sworn proof of loss. This statement should include the following information:
***

(2) The interest you and others have in the property ***;

(3) The actual cash value and amount of loss of each item damaged or destroyed;
***

(5) Changes in title, use, occupancy or possession of the property during the policy period ***."

Their policy also provided:

"Concealment or Fraud.

This policy is void if you intentionally conceal or misrepresent any material fact or circumstance, before or after loss."

The Passeros executed a sworn statement in proof of loss on October 10, 1986, claiming $9,040 as the actual cash value of the property stolen on September 8, 1986. Included in their statement was a $900 stereo system and $1,500 worth of video equipment. Allstate subsequently exercised its right to examine the Passeros under oath.

At her examination under oath, Elizabeth Passero testified that she was employed by J.C. Penney, where her husband purchased their stereo system. She identified the stereo receipt they submitted to Allstate as a true and correct copy of the original. This receipt was dated December 20, 1985; the purchase price was listed as $962.95. She admitted that she was entitled to an employee discount, but de-

nied receiving a discount on the stereo system.

Edward Passero's testimony regarding the stereo was consistent with his wife's. He also testified, during his examination, that he purchased the video equipment from J.J.'s Video. Passero identified a receipt from J.J.'s, dated March 23, 1986, as a true and correct copy of the original receipt they submitted to Allstate. This receipt listed the purchaser as "E. Passero."

However, Allstate's investigation of the Passeros' claim revealed that they made misrepresentations concerning both the stereo system and the video equipment. Allstate deposed Sandra K. Gass, an operations manager at J.C. Penney's. Gass testified that Penney's had no record of the stereo receipt Elizabeth Passero identified as the original receipt at her examination under oath. Gass went on to identify the true receipt, which listed Elizabeth Passero as the purchaser and the price as $454.71. The true receipt reflected, among other things, Elizabeth Passero's employee discount.

Allstate likewise secured an affidavit from John Jinacio, the owner of the store where the video equipment was purchased. Jinacio affirmed that, on March 23, 1986, "E. Schullo" purchased Magnavox video equipment bearing a serial number identical to the serial number of the equipment which Edward Passero swore he purchased on that date. Jinacio further affirmed that the true receipt was issued to Schullo and bore his name, rather than Edward Passero's.

Accordingly, Allstate filed a motion for summary judgment, arguing that the Passeros breached their insurance policy by committing material misrepresentations regarding the stereo system and the video equipment. Specifically, Allstate stated that Elizabeth Passero's testimony under oath that the stereo was purchased for $962.95 was untrue; her sworn statement that the receipt they submitted to Allstate was the original receipt was untrue; and her sworn statement that she received no employee discounts was untrue. Edward Passero's testimony under oath concerning the stereo was similarly untrue. In addition, Allstate continued, his sworn statement that he purchased the video equipment was untrue; and his sworn statement that the receipt they submitted to Allstate was the original receipt was untrue. The conclusion that the video equipment receipt was forged—to reflect the name "E. Passero" instead of "E. Schullo"—was inescapable. As a result of these material misrepresentations, Allstate asserted, the Passeros forfeited their rights to recover under the policy.

The circuit court entered summary judgment in Allstate's favor on July 22, 1988. Following the circuit court's denial of the Passeros' motion for reconsideration on September 19, 1988, they prosecuted

this appeal. The Passeros are represented by different counsel on review.

### III

In this court, the Passeros argue that their misrepresentations were not material. In particular, they maintain that their misrepresentations were immaterial because Allstate did not act differently than it would have acted had the misrepresentations never been made; that their misrepresentations were immaterial under the insurance policy's language; that their misrepresentations were immaterial under relevant case law; and that Allstate did not meet its burden of showing that their misrepresentations were material. Moreover, the Passeros contend that the circuit court erred by entering summary judgment against them, since the issue of whether their misrepresentations were material was a question of fact for the jury. It is noteworthy that in this court the Passeros neither attempt to deny nor to explain their misrepresentations.

At the outset, we must reject the Passeros' argument that their misrepresentations were immaterial, as they did not cause Allstate to act differently. This argument is grounded upon a definition of materiality drawn from cases involving common law, statutory, and consumer fraud. (See *Buechin v. Ogden Chrysler-Plymouth, Inc.* (1987), 159 Ill. App. 3d 237, 511 N.E.2d 1330; *Mack v. Plaza Dewitt Limited Partnership* (1985), 137 Ill. App. 3d 343, 484 N.E.2d 900; *Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348, 478 N.E.2d 1132.) These cases do not involve insurance, unlike our case. As we shall explain below, the definition of material misrepresentations is quite different in the realm of insurance law.

The Passeros also contend that their misrepresentations were immaterial in view of the insurance policy's language. Essentially, they argue that the policy's terms were changed impermissibly by Allstate's conduct—in examining them about immaterial matters—and by the circuit court's interpretation of the policy. Regarding Allstate's conduct, the Passeros assert that since their policy provided replacement cost coverage, Allstate's investigation of the stereo system's price and the identity of the video equipment's purchaser was improper. In other words, they say, because Allstate was required under the replacement cost policy to pay them the full value of the property at the time it was allegedly stolen, what they originally paid for it or how they originally acquired it was immaterial.

■ ■ This contention fails for two reasons. In the first place, as stated in the policy provisions quoted above, the Passeros were under

an affirmative obligation to provide Allstate with true receipts, to submit to an examination under oath, and to submit a sworn proof of loss. Those provisions aimed to protect Allstate, at least in part, from reimbursing the Passeros for stolen property that did not truly belong to them. In the second place, it has long been held by courts construing insurance policy provisions imposing similar duties upon insureds that the insurer's right to investigate a claim is broad:

> "The object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the Company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to its rights, to enable it to decide upon its obligations, and to protect it against false claims. And every interrogatory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured." (*Claflin v. Commonwealth Insurance Co.* (1884), 110 U.S. 81, 94-95, 28 L. Ed. 76, 82, 3 S. Ct. 507, 515.)

(See also *Gipps Brewing Corp v. Central Manufacturers' Mutual Insurance Co.* (7th Cir. 1945), 147 F.2d 6, 13) (when circumstances surrounding presentation of insured's claim are suspect, insurer is entitled to conduct a searching examination).) In view of the language of the Passeros' insurance policy and cases interpreting similar language, we conclude that Allstate's investigation, which revealed their misrepresentations, was not improper.

■ Similarly, we reject the Passeros' contention that the circuit court impermissibly changed their insurance policy's terms by granting Allstate's motion for summary judgment. The order from which they appeal does not state the reasons for the circuit court's decision. This fact takes on additional importance because the Passeros have not favored us with transcripts of the hearing on Allstate's motion for summary judgment, or the hearing on their motion to reconsider the circuit court's entry of summary judgment against them. It was incumbent upon them to provide us with the transcripts, if they wished us to review this issue. (See *In re Estate of Jacobs* (1989), 189 Ill. App. 3d 625, 629, 545 N.E.2d 502, 504.) Since the Passeros neglected to do so, affirmance on this question is dictated. See *Davis v. Allstate Insurance Co.* (1986), 147 Ill. App. 3d 581, 584-85, 498 N.E.2d 246, 248-49.

Furthermore, the Passeros argue that cases construing replacement cost policies such as that in controversy here demonstrate that

their misrepresentations—regarding the stereo system's price and the identity of the video equipment's purchaser—were immaterial. They rely upon *FSC Paper Corp. v. Sun Insurance Co.* (7th Cir. 1984), 744 F. 2d 1279, and *Zaitchick v. American Motorists Insurance Co.* (S.D.N.Y. 1982), 554 F. Supp. 209, *aff'd* (2d Cir. 1983), 742 F. 2d 1441. These two cases were primarily concerned with the computation of replacement cost damages, rather than the materiality of misrepresentations. Thus, they are of limited value in a case such as ours, where the materiality of the insureds' misrepresentations is the dispositive issue, instead of the measure of damages.

In addition, the Passeros have failed to persuade us that Allstate did not show that their misrepresentations were material. Contrary to the Passeros' narrow definition of materiality, noted previously, courts since *Claflin* have defined materiality broadly in the context of false swearing. For instance, in *Fine v. Bellefonte Underwriter's Insurance Co.* (2d Cir. 1984), 725 F.2d 179, plaintiff suffered a fire loss to his insured property. His insurance policy included a false swearing clause virtually identical to that at issue in the case at hand, which we set forth above. During the insurer's investigation of his claim, plaintiff made false statements under oath, swearing that he gave certain instructions regarding his building's heating and sprinkler system, when in fact he gave different instructions. The insurer denied his claim on the basis of the false swearing clause, among other grounds, and he sued in Federal court. Plaintiff prevailed even though the district court found his statements under oath to be false, since the court determined that they were not material.

■ Upon the insurer's appeal, the appeals court reversed, holding that plaintiff's violation of the false swearing provision voided the policy. Because the statements were admittedly false, the second circuit noted that whether they were material was a question of law. (*Fine*, 725 F.2d at 183.) Specifically, the question was whether a false statement is material only if it relates to a matter that ultimately proves to be significant in the ultimate disposition of the claim, or whether it is sufficient that the false statement concerns a subject reasonably relevant to the insurer's investigation at the time. According to the *Fine* court, the law was clear that the materiality of the false statements during the insurer's investigation is not to be judged by what the facts later turn out to be. The purpose of the provision requiring the insured to submit to examination under oath is to enable the insurer to acquire knowledge that may aid it in its further investigation, or that may otherwise be significant to it in determining its liability and the position it should take regarding the claim. The court rea-

soned that the materiality requirement was satisfied if the false statement concerns a subject relevant to the insurer's investigation as it is then proceeding. (*Fine*, 725 F.2d at 183.) False sworn answers are material if they might have affected the insurer's action or attitude, or if they may be said to have been calculated to discourage, mislead, or deflect the insurer's investigation in any area that might have seemed to it, at that time, a relevant area to investigate. In the case before it, the appeals court decided, the false statements were clearly material when measured by the proper standard. *Fine*, 725 F.2d at 184. See also *Cummings v. Farmers Insurance Exchange* (1988), 202 Cal. App. 3d 1407, 249 Cal. Rptr. 568 (if misrepresentation concerns a subject reasonably relevant to insurer's investigation, and if reasonable insurer would attach importance to the fact misrepresented, then it is material).

■ When the foregoing definition of materiality is applied to our case, it is clear that the Passeros' misrepresentations were material. Like plaintiff in *Fine*, they were obliged to be truthful during the claim investigation, and like him they admittedly made false representations. Those misrepresentations are material because they may be said to have been calculated to discourage, mislead, or deflect Allstate's investigation into a relevant area. That is, the Passeros attempted to conceal, among other things, how much they paid for the stereo system and who purchased the video equipment. This information was relevant because it called into question their ownership of the allegedly stolen property. For example, the undisputed facts are that Edward Passero did not purchase the video equipment, that the true receipt was physically altered in an attempt to show that he did purchase it, and that he lied under oath about the transaction. A reasonable insurer in Allstate's position would undeniably attach importance to such facts.

■ The Passeros apparently assert that misrepresentations concerning an item's price and the identity of its purchaser are immaterial as a matter of law when replacement cost insurance is at issue. But this argument does not withstand scrutiny. Ownership of lost property is material in the context of replacement cost coverage. And the price of an item and the identity of its purchaser are relevant to ownership. If ownership is material to replacement cost, and if price and identity of purchaser are material to ownership, then they are material to replacement cost. That is, ownership is material because the Passeros' replacement cost policy—quoted previously—required them to state what sort of ownership interest they had in the stolen property, and to furnish Allstate with evidence of purchase, title, use,

and possession of the property. We repeat that case law explains the rationale for such requirements, namely that no reasonable insurer would reimburse its insureds for lost property that did not belong to them.

If ownership is material to replacement cost insurance, then an item's price and the identity of its purchaser are, in turn, material to ownership. In other words, purchase is one method of obtaining ownership. Purchase is the sole method by which the Passeros claim to have acquired the stereo system and the video equipment, in fact. They do not claim, for instance, that those items were gifts.

■ Focusing upon the identity of the video equipment's purchaser, the Passeros' undenied misrepresentations called their ownership of it into question. The Passeros claimed that they owned the equipment, by submitting a purportedly true receipt—which was altered—and by Edward Passero's testimony under oath that he purchased it—which was false. These misrepresentations cast doubt upon their ownership of the video equipment. As we have stated, since ownership is material to replacement cost coverage, and since the identity of an item's purchaser is material to ownership, such identity must be material to replacement cost. From this it follows that the Passeros' misrepresentations, at minimum those regarding the video equipment, were material. Therefore, we cannot say that their misrepresentations were immaterial as a matter of law.

■ Finally, we come to the Passeros' argument that the circuit court erred in entering summary judgment against them because the materiality of their misrepresentations was a matter for the jury. Parenthetically, we note that they failed to demand trial by jury. Be that as it may, it is settled that false swearing by the insured renders the policy void if, as here, the policy provides for that result from such conduct. While false swearing is ordinarily a jury question, it becomes a question of law when the insured's misrepresentations cannot be seen as innocent. See *Folk v. National Ben Franklin Insurance Co.* (1976), 45 Ill. App. 3d 595, 596-97, 359 N.E.2d 1056, 1057.

In the cases the Passeros have cited, the insureds' misrepresentations were relatively innocent. The insured's expert witness in *Jay-Bee Realty Corp. v. Agricultural Insurance Co.* (1943), 320 Ill. App. 310, 50 N.E.2d 973, based a replacement cost estimate upon new items, while the insurer's expert based that estimate upon used items. In *Watson v. State Farm Fire & Casualty Co.* (1984), 122 Ill. App. 3d 559, 461 N.E.2d 57, the insured neglected to inform his insurer that he was in the company of a woman, who was not his wife, the eve-

ning a fire destroyed his home. At that time he was separated from his wife, and she had filed for divorce. Lastly, in *Fitzgerald v. MFA Mutual Insurance Co.* (1985), 134 Ill. App. 3d 1007, 481 N.E.2d 754, the insured testified that he did not understand the proof of loss form, and that the insurer gave him no assistance in understanding it, although he requested help on two occasions. This prompted him to estimate the value of his lost property upon the basis of a department store catalog.

■■ As stated previously, the Passeros have not denied swearing falsely. Additionally, they have not attempted in this court to come up with any explanation—innocent or otherwise—for their conduct. Consequently, their conduct is not comparable to the relatively innocent conduct of the insureds in the cases they rely upon. Whether their misrepresentations were material, then, was a question of law rather than a question of fact.

## IV

In closing, we note that the Passeros' opening brief does not comply with the rules of our supreme court. The order appealed from is not included in the appendix, contrary to Supreme Court Rule 342(a) (107 Ill. 2d 342(a)). This district's docket is full, and noncompliance with such rules does not help us resolve appeals expeditiously.

For the stated reasons, we uphold the circuit court's entry of summary judgment in Allstate's favor on the Passeros' complaint.

Affirmed.

LORENZ and GORDON,* JJ., concur.

---

*Justice R. Eugene Pincham participated in this case prior to his resignation. Since that time, Justice Joseph Gordon was designated the third member of the panel and has read the record and briefs and has listened to the oral argument tapes.