A&A, INC., d/b/a Granny's Waffle and Pancake House, Plaintiff-Appellant and Cross-Appellee, v. GREAT CENTRAL INSURANCE COMPANY, Defendant-Appellee and Cross-Appellant.

First District (4th Division)   No. 1—91—2488

Opinion filed February 10, 1994.

S. Joseph Formusa, of Rabens, Formusa & Glassman, Ltd., of Chicago, for appellant.

Thomas J. Finn, of Leahy, Eisenberg & Fraenkel, Inc., of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

The insured plaintiff, A&A, Inc., appeals from a jury verdict which relieved the defendant, Great Central Insurance Company, of liability for paying on a claim arising from a fire on the plaintiff's premises. The jury found that although the plaintiff had not been involved in setting the fire, the plaintiff had committed fraud in presenting its claim and thus vitiated the insurance company's obligation to reimburse the plaintiff for the loss. On appeal, the plaintiff argues that the trial court erred in submitting the issue of fraud to the jury. Great Central cross-appeals, arguing that it was denied a fair trial on its arson defense when the trial court excluded physical evidence recovered from the site of the fire.

For the reasons presented below, we believe that portions of the jury instructions should not have been submitted to the jury. We also

hold that the trial court erroneously excluded the evidence removed from the premises after the fire. We reverse the trial court and remand this case for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 1984, a fire broke out on the premises of Granny's Waffle & Pancake House in Forest Park, Illinois. At the time of the fire, the restaurant was under lease to A&A, Inc., whose sole shareholder was Ernest Raguso. On December 1, 1983, Raguso had purchased the corporate stock and restaurant equipment of A&A, Inc., from Alfred Sofiakis for $80,000. Raguso made a $15,000 down payment to Sofiakis, who retained a security interest in the restaurant fixtures and equipment, and assumed certain outstanding obligations of the corporation. Under the terms of the purchase agreement, Raguso was required to obtain full insurance coverage for the restaurant. Raguso purchased a one-year policy from the defendant, Great Central Insurance Company, effective December 1, 1983.

The restaurant was not open for business at the time of the January 21, 1984, fire. It had not reopened for business after a fire in June 1983 caused smoke and water damage to the floor, ceiling, and walls of the restaurant as well as the refrigerator and freezer. Sofiakis testified that he spent approximately $26,000 to repair the restaurant after the June fire. Raguso testified that by the time he closed the purchase contract with Sofiakis, all the damage from the June fire had been repaired.

After the fire of January 21, 1984, Raguso submitted a claim to Great Central Insurance. In June 1984, Raguso submitted a signed "Sworn Statement in Proof of Loss" to Great Central for damage to property in the amount of $89,940 and for loss resulting from the interruption of business valued at $35,847. Raguso's sworn statement asserted that the loss did not result from any action taken by him, on his behalf, or with his consent. His statement also declared that he had made no attempt to deceive the insurance company.

In November 1984, Raguso informed Great Central during an examination under oath that his first discussion with Sofiakis concerning the purchase of the restaurant occurred after the June 1983 fire. Later at trial in 1991, however, Raguso testified that his first discussions with Sofiakis regarding the sale of the restaurant occurred before the June 1983 fire.

In February 1985, Great Central rejected the plaintiff's claim for reimbursement for loss resulting from the January fire. In March 1985, the plaintiff filed this action against Great Central.

In June 1985, Great Central filed its answer and two affirmative

defenses to the complaint. Great Central's first affirmative defense alleged that it was relieved of any obligation under the policy because "[t]he insured either caused the fire, or it was caused with the insured's consent and authority."

The second affirmative defense asserted that the plaintiff was barred from recovering under the policy because of its "misrepresentation of the subject matter of the insurance, and other conduct by which the insured attempted to defraud the Defendant." Great Central's second affirmative defense also quoted the following provision from the plaintiff's insurance policy:

"This entire policy shall be void if the Insured has concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this insurance or the subject thereof, or if the Insured shall make any attempt to defraud Great Central either before or after the loss."

Great Central's second affirmative defense did not allege any underlying facts.

The case proceeded to trial in April 1991. The plaintiff's key witness, Ernest Raguso, testified that after he closed on the restaurant on December 1, 1983, cold weather set in and froze the water pipes. Raguso testified that he installed a small kerosene heater in the restaurant to prevent other pipes from freezing. He explained that from late December up until two or three days before the January 21 fire, he visited the restaurant almost every other day. He recalled that the kerosene heater was operating when he left on his last visit to the restaurant before the fire. Raguso testified that when the fire broke out around 9 a.m., he was visiting his sister in Elmwood Park.

Also at trial, Raguso denied having seen a copy of the insurance policy before the fire. Raguso testified that Richard Guy Serpe, the insurance agent who sold him the policy, told him that he would receive the policy by mid-December, but the policy never arrived. According to Raguso, Serpe told him that he had sent out a copy of the policy, but would furnish another copy. Raguso testified that he never received the policy.

After the plaintiff completed its case in chief, Great Central moved for a directed verdict. The trial court denied the motion, ruling that the plaintiff had established a *prima facie* case regarding breach of an insurance policy.

Great Central sought to show, as it had asserted in its first affirmative defense, that the plaintiff was responsible for arson regarding the fire of January 21, 1984. The insurance company presented expert testimony from two fire investigators, who testified that the fire was

incendiary in origin, based on their observations that (1) there were areas of "low-burning," (2) there were three separate points of fire origin, (3) there was evidence that some type of accelerant had been poured on the carpeting, and (4) a sample of liquid removed from the site of the fire and submitted for chemical analysis was a heavy petroleum distillate.

Great Central attempted to introduce into evidence the contents of a file cabinet drawer which the Forest Park police department had removed from the restaurant after the fire. Great Central contended that the contents of the drawer constituted crucial evidence which demonstrated that the January fire had been intentionally set. The evidence showed, Great Central asserted, that the restaurant had financial difficulty even prior to opening, and that the fire occurred within days after Raguso received the insurance policy. In an offer of proof, Great Central asserted in general terms that the drawer contained ledger books; past-due bills of A&A, Inc., from the spring and summer of 1983 that had never been paid; monthly sales tax returns that were unfiled for February, March, and April 1983; and various checks that were returned for insufficient funds. The drawer also contained an envelope from the James Serpe Insurance Agency which enclosed a copy of the plaintiff's insurance policy and a cover letter to Raguso signed by Serpe, dated January 16, 1984.

In addition to the evidence contained in the file cabinet, Great Central sought to introduce physical evidence that had been obtained from the crime lab, including photographs of the fire site taken by the Forest Park police department. Great Central had obtained the file cabinet holdings and the crime lab evidence through a subpoena issued on the police department.

The plaintiff objected to admission of the drawer's contents on the basis that Great Central failed to furnish it with copies of the documents contained in the drawer. The trial court found that counsel for Great Central had withheld copies of certain documents from the plaintiff, and, consequently, sanctioned Great Central by excluding all of the drawer's contents from the evidence. The trial court's decision to exclude the file drawer forms the basis of Great Central's cross-appeal.

In support of its second affirmative defense that the plaintiff had made misrepresentations and attempted to defraud it, Great Central offered the testimony of insurance agent Richard Serpe. Serpe testified that Raguso told him that he had owned and operated a successful restaurant in Las Vegas for years. Raguso told Serpe that the restaurant would be operating within five days of their meeting at the end of November 1983. According to Serpe, Raguso also told

him that it was imperative that the restaurant be open for the Christmas holidays and that the repairs stemming from the June 1983 fire be completed. Serpe testified that had he known that Raguso had no prior restaurant experience and that the restaurant would not be open in 5 to 10 days, he would not have placed the policy because the plaintiff would not have been able to satisfy Great Central's underwriting criteria. Serpe testified that he wrote up the policy and mailed it to Raguso with a cover letter dated January 16, 1984, and that the letter was not returned undelivered. On cross-examination, Serpe conceded that when Great Central issued the policy on December 1, 1983, it knew that the restaurant was not operating and that a fire had broken out in June.

On rebuttal, Raguso testified that Serpe had asked him in late November about his prior restaurant experience, and Raguso had told him that he had none. Raguso denied that he told Serpe he had prior restaurant experience in Las Vegas.

To bolster its suggestion that the plaintiff had a motive to commit arson, Great Central also presented testimony from various creditors who testified about the restaurant's financial condition. A credit manager for the National Baking Company, for instance, testified that in the summer of 1983, Granny's Waffle and Pancake House was three to four months delinquent in paying a $1,500 debt. That debt was never paid. In addition, an employee of the L&G Meat Company testified that in June 1983, Granny's had an outstanding balance of nearly $1,900 which was never paid. Finally, Granny's landlord testified that Sofiakis typically failed to pay the rent when due on the first of the month and that he occasionally served Sofiakis with eviction notices.

At the conclusion of the evidence, the trial court denied plaintiff's motion for a directed verdict. The jury returned a verdict in favor of Great Central. In response to a special interrogatory on Great Central's first affirmative defense, the jury responded in the negative. The jury responded affirmatively, however, to the special interrogatory on Great Central's second affirmative defense that the plaintiff had committed fraud in presenting its insurance claim.

## DISCUSSION

### I. Exclusion of Evidence from the File Cabinet

On cross-appeal, Great Central argues that the trial court erred in excluding from evidence the contents of a file cabinet drawer which had been removed after the fire by the Forest Park police department from the restaurant. The drawer contained physical evidence from

the crime lab, ledger books, past-due bills, unfiled sales tax returns, and various insufficient fund checks. The drawer also contained a copy of the plaintiff's insurance policy. Great Central had obtained these items by issuing a subpoena on the police department. The plaintiff received a copy of this subpoena as well. Seven months before trial, Great Central informed the plaintiff in a letter that Great Central had possession of physical evidence and documents which had been recovered from the site of the fire and which were available for plaintiff to inspect at its convenience. Although Great Central invited the plaintiff to examine the evidence, the plaintiff did not inspect it. Great Central did not provide A&A with copies of the documents contained in the file drawers.

At trial, Great Central attempted to introduce the contents of the file drawer. A&A objected on the basis that Great Central failed to produce the contents of the drawer during discovery. The trial court upheld the objection. The court sanctioned Great Central by excluding the contents from the evidence.

Great Central urges that the trial court's ruling severely prejudiced it in the presentation of its defense that plaintiff deliberately caused the fire in the restaurant. According to Great Central, its arson defense would have been bolstered by evidence that the restaurant was experiencing financial difficulties and that A&A possessed a copy of the insurance policy. Defendant also asserts that the excluded drawer contained crucial physical evidence from the crime lab.

■ Illinois Supreme Court Rule 219(c) addresses the sanctions a trial court may impose on a party which fails to comply with the discovery rules. (134 Ill. 2d R. 219(c).) Rule 219(c) provides that the court may enter a "just" order where a party unreasonably refuses to comply with the discovery order. The rule also authorizes a trial court to bar evidence.

The trial court retains discretion under this rule in determining whether or not to impose sanctions, and a reviewing court will not disturb a trial court's decision absent an abuse of discretion. (*American Family Insurance Co. v. Village Pontiac-GMC, Inc.* (1992), 223 Ill. App. 3d 624, 627, 585 N.E.2d 1115, 1117-18.) However, the court should impose sanctions with the goal of facilitating discovery rather than punishing the offending party. A "just" order under Rule 219(c) is one that ensures both discovery and trial on the merits. *Wakefield v. Sears, Roebuck & Co.* (1992), 228 Ill. App. 3d 220, 226, 592 N.E.2d 539, 542.

■ We find that the trial court abused its discretion in excluding the contents of the file drawer from evidence. The record here shows

that Great Central did not unreasonably refuse to comply with a discovery rule. Unlike the typical discovery dispute, this case involves materials which were not in the exclusive possession and control of the party penalized for a discovery violation. The file drawer and its contents belonged to the plaintiff and were confiscated by the Forest Park police department in the arson investigation. The plaintiff knew this, knew that Great Central successfully subpoenaed the materials from the police department more than six months before trial, and does not deny that Great Central invited it to its office to inspect and copy the evidence. Under these circumstances, the plaintiff was not surprised and prejudiced as a result of its own property being unavailable a reasonable time before trial. The trial court, in fact, observed that counsel for plaintiff shared part of the blame because he agreed to rely upon an informal rather than formal discovery procedure:

> "As I said before, certainly [plaintiff's] counsel's conduct is not entirely blameless. When you choose to do something unofficially and informally, sometimes things will not get supplied to you that maybe should have been if you had done it formally. You both chose to do it informally.
>
> I asked you at the outset of the case do you need a 237 conference. You both said no. You said I have turned over everything I have. He said I am satisfied he turned over everything he has. ***
>
> We spend half an hour at least today on 237 problems because you didn't send a 237 notice to each other. You are both at fault. You are both wrong and my ruling stands."

In addition, the trial court's order in this case precluded trial on the merits. The court's order in effect prohibited Great Central from introducing the actual insurance policy which was discovered in the file cabinet; the introduction of this policy into evidence would have enabled Great Central to impeach Raguso's testimony that he did not receive the insurance policy before the fire. The court's ruling thus deprived the jury of the opportunity to hear all of the relevant evidence and assess Raguso's credibility.

For these reasons, we believe that Great Central did not unreasonably refuse to comply with its discovery obligations here. We hold that the trial court abused its discretion in excluding the contents of the file drawer from evidence.

## II. Jury Instructions Concerning Great Central's Second Affirmative Defense of Fraud

The plaintiff urges, first, that the trial court erred in formulating

the issues instruction and special interrogatory on Great Central's fraud defense because statements (a) through (c) of the instruction were not based on competent evidence. The plaintiff argues that it was reversible error for the court to give this instruction when the instruction was unsupported by the evidence.

■ A special interrogatory is proper if it pertains to one of the ultimate facts upon which the rights of the parties directly depend. (*Batterton v. Thurman* (1982), 105 Ill. App. 3d 798, 803, 434 N.E.2d 1174, 1177.) However, an interrogatory which fails to include significant elements of a particular action may be defective. (See *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 136, 254 N.E.2d 453, 456 (interrogatory whether plaintiff-pedestrian exercised ordinary care for his own safety before and at time of accident was defective for failure to include additional element of whether plaintiff's negligence proximately contributed to his injuries), *cert. denied* (1970), 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697.) If the faulty interrogatory prejudiced the appealing party, a reversal may be required. *Bruske*, 44 Ill. 2d at 136, 254 N.E.2d at 456.

The court's instruction on Great Central's second affirmative defense of fraud described alleged fraudulent misrepresentations made by the plaintiff concerning its insurance policy:

"[T]he defendant claims plaintiff is barred from recovering under the policy because Ernest S. Raguso intentionally and for the purpose of deceiving the defendant, made the following fraudulent misrepresentations:

(a) He stated to the defendant the time when he first began looking for a business to operate in the Chicago area;

(b) He stated to the defendant on or shortly before December 1, 1983, that the business would be open within about one week;

(c) He stated to the defendant as to the condition of the premises, that substantial repairs had been conducted and the business was nearly ready to open;

(d) He submitted a sworn statement in proof of loss that nothing had been done by him or anyone acting with his knowledge, consent and authority to cause the loss."

## A. Statement (a) of the Jury Instruction on Fraud: False Swearing

■ In November 1984, Raguso informed Great Central during an examination under oath that his first discussion with Sofiakis concerning the purchase of the restaurant occurred after the June 1983 fire. Later at trial, however, Raguso testified that his earliest negotiations with Sofiakis over the restaurant occurred before the June 1983 fire. Raguso's inconsistent testimony subsequently became the subject of statement (a) in the jury instruction on fraud.

Statement (a) asked the jury to consider whether Raguso's statement to Great Central about the date when Raguso began to look for a Chicago-area business constituted a fraudulent misrepresentation.

The jury, however, was not given guidance on how to define "fraudulent misrepresentation." Although the plaintiff proffered an issues instruction which set forth a definition of "fraudulent misrepresentation," the court sustained Great Central's objection and refused the plaintiff's version. Even more significantly, the jury was not asked to determine whether Raguso's allegedly false statement given under oath was in fact material to Great Central's investigation of the claim.

Ordinarily, the materiality of false swearing is a question of fact for the jury. (*Pacific Indemnity Co. v. Golden* (2d Cir. 1993), 985 F.2d 51, 57; *Passero v. Allstate Insurance Co.* (1990), 196 Ill. App. 3d 602, 610, 554 N.E.2d 384, 389.) While the materiality of a false statement given under oath may become a question of law when the insured's misrepresentation is not innocent (*Passero*, 196 Ill. App. 3d at 610, 554 N.E.2d at 389), we do not discount the possibility here that Raguso's statement might have been relatively innocent. On direct examination at trial, for instance, Raguso testified that he first approached Sofiakis about purchasing the restaurant before the June fire, that Sofiakis was reluctant to sell, that Raguso returned with Sofiakis to the restaurant after the fire to examine the condition of the restaurant and to decide whether he still wanted to purchase it, and that they agreed on a purchase price shortly before going to the lawyer in October 1983. We are not persuaded that Raguso was necessarily inconsistent when he responded under oath in November 1984 to the following question:

"Q. So your first discussion with [Serpe] specifically relating to your interest in buying the Granny's Restaurant, those conversations were all after the fire in June of 1983?

A. Right."

Because Sofiakis declined to discuss selling the restaurant in June before the fire, Raguso and Sofiakis conceivably did not engage in serious negotiations until after the fire had occurred. Based on the limited evidence before us, we are unwilling to conclude that Raguso unequivocally lied or made a false statement at his examination under oath in November 1984. Accordingly, we do not consider the materiality of Raguso's alleged false swearing to be a question of law.

We do believe, however, that the instruction concerning Raguso's alleged false statement was defective for failing to address the issue of whether the alleged statement was material to Great Central's investigation. (See *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 136, 254

N.E.2d 453, 456.) We consider this defect prejudicial, especially in light of the fact that the jury was not given a definition of "fraudulent misrepresentation." Had the trial court adopted the proposed instruction proffered by the plaintiff, for example, the jury would have been instructed that "fraudulent misrepresentation" referred to any representation which "materially affected the defendant's acceptance of the insured risk or the hazard assumed by the defendant" and that "the person to whom the representation was made had a right to rely upon it and in fact did so." The actual instruction which was tendered to the jury, however, failed to raise the issue of materiality in the context of false swearing. The jury was therefore not properly instructed on the matter of Raguso's allegedly false statement under oath.

The trial court erred in submitting statement (a) to the jury.

## B. Statements (b) and (c) of the Jury Instruction on Fraud: Fraud in the Procurement of an Insurance Policy

■ The plaintiff argues that the alleged misrepresentations in statements (b) and (c) should not have been submitted to the jury because they concern the procurement of insurance, and under the Illinois Insurance Code (Ill. Rev. Stat. 1991, ch. 73, par. 613 *et seq.*), any misrepresentations made by the insured in the negotiation of a policy must appear in writing in order to void the policy.

The statute governing misrepresentations in insurance applications is section 154 of the Illinois Insurance Code. Under section 154, any misrepresentations made by the insured in the negotiation of a policy do not defeat the policy unless the false representation appears in the policy or in an endorsement or rider attached to the policy. According to the statute, an insurance contract can be voided for a material misrepresentation only if the misrepresentation has "been made with actual intent to deceive" or "materially affects either the acceptance of the risk or the hazard assumed by the company." Ill. Rev. Stat. 1991, ch. 73, par. 766.

At the outset, we note that the misrepresentations asserted in statements (b) and (c) satisfy the timing requirements of section 154, since both concern Raguso's alleged misrepresentations made during the course of negotiations of the insurance policy. The misrepresentations alleged in statements (b) and (c), however, fail to meet section 154's other requirement that the misrepresentation appear in writing either in the insurance policy or attached rider. Great Central does not identify any document which contains the misrepresentations alleged in statement (b) or (c). The plaintiff's policy with Great Central does not contain a written acknowledgment of the restaurant's anticipated date of opening, nor does the policy describe the condition

of the restaurant premises. Further, the policy does not mention the plaintiff's alleged assurances that the restaurant had been fully repaired and would be open for business in the immediate future. Because Raguso's alleged misrepresentations do not appear in any writing, section 154 precludes the alleged misrepresentations reflected in statements (b) and (c) from being valid defenses. See *International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.* (1988), 177 Ill. App. 3d 555, 564-65, 532 N.E.2d 493, 499 (misrepresentation which allegedly occurred during telephone conversation regarding issuance of certificate of insurance precluded from being valid defense under section 154 in absence of any writing).

The trial court erred in submitting statements (b) and (c) to the jury.

C. Statement (d) of the Jury Instruction on Fraud: Misrepresentation in Sworn Statement in Proof of Loss

■ Statement (d) of Great Central's second affirmative defense asserted that the plaintiff should be barred from recovery under the policy because Raguso made the following fraudulent misrepresentation:

"He submitted a sworn statement in proof of loss that nothing had been done by him or anyone acting with his knowledge, consent and authority to cause the loss."

In June 1984, Raguso had submitted a signed "Sworn Statement in Proof of Loss" to Great Central for damages to property and other losses resulting from the restaurant fire. In this sworn statement, Raguso asserted that the loss did not result from any action taken either by him, on his behalf, or with his consent. Raguso's sworn statement also asserted that he had not made any attempt to deceive the insurance company.

The plaintiff argues that the jury's affirmative answer to the special interrogatory on fraud could not have been predicated on the alleged misrepresentation in statement (d) because the jury's negative answer to the special interrogatory on arson had established that Raguso was not involved in the fire of January 21. Consequently, the plaintiff argues, the jury's affirmative response to the fraud interrogatory must necessarily have been based upon one of the other three alleged misrepresentations set forth in the second affirmative defense (*i.e.*, statement (a), (b), or (c)). Because none of the alleged misrepresentations in statements (a) through (c) are supported by competent evidence, and because the jury had already returned the special arson interrogatory in the negative, the plaintiff urges that the verdict cannot stand.

Repetition alone in jury instructions is not reversible error. (*Bar-*

*reto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 132, 478 N.E.2d 581, 590.) Although statement (d) and the arson defense address Raguso's alleged role in causing the loss, we believe that both instructions are sufficiently different such that the trial court was justified in submitting both to the jury. In light of our conclusion that this case must be remanded for a new trial, however, we cannot allow the jury's response to the second interrogatory to stand.

Accordingly, we reverse the trial court's ruling excluding Great Central's evidence. In addition, we remand this case for retrial on the arson defense and statements (a) and (d) of the jury instructions on the fraud defense. With regard to statement (a), we remand specifically on the issue of whether Raguso's alleged false swearing was material to Great Central's investigation of the insurance claim.

Reversed and remanded.

CAHILL, P.J., and JOHNSON, J., concur.