Docket No. 104378.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

RODNEY J. BARTH, Appellant, v. STATE FARM FIRE & CASUALTY COMPANY, Appellee.

*Opinion filed March 20, 2008.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

A fire destroyed plaintiff Rodney J. Barth's home, and he filed a fire loss claim with his insurer, State Farm. State Farm denied the claim under an exclusion in Barth's policy voiding coverage if the insured intentionally concealed or misrepresented a material fact impacting coverage. Barth filed a complaint against State Farm in the circuit court of Sangamon County seeking damages after the denial of coverage.

The primary issue before us is whether the exclusionary clause on misrepresentation includes the common law fraud elements of reasonable reliance and prejudice or injury by the insurer even though the policy does not expressly include those elements. The exclusionary clause here precluded coverage when an insured concealed or

misrepresented material facts relating to the insurance but did not require a showing of reasonable reliance or prejudice. The trial court rejected the jury instruction offered by Barth on the elements of reasonable reliance and prejudice. The jury rendered a special verdict in favor of the insurer, State Farm Fire & Casualty Company, finding that it proved its second affirmative defense, the exclusionary clause, by clear and convincing evidence.

The majority of the appellate court affirmed, with the dissenting justice stating that a showing of reasonable reliance and prejudice is required to establish the insurer's second affirmative defense. We agree with the majority and affirm this portion of the appellate court's judgment. Due to our disposition of this issue, we need only address two other issues raised on appeal: (1) recusal of the trial judge because he was insured by State Farm; and (2) the sufficiency of the evidence. The appellate court held the trial judge need not recuse himself from the case and that the jury verdict was supported by sufficient evidence. 371 Ill. App. 3d 498. We affirm the appellate court judgment on these issues as well.

## I. FACTS

The insured, Rodney J. Barth, filed a claim in the circuit court of Sangamon County, seeking damages after State Farm Fire & Casualty Company denied coverage under his homeowner's policy for fire damage to his home. Barth had been disabled by polio in his youth and hired William Penn to drive him and perform errands. He did not know then that Penn was a convicted felon. The fire began while Barth was out with Penn and his friend, William Burmeister, who was also a convicted felon. The fire was immediately determined to be suspicious, and State Farm began an investigation.

After the fire, Barth accused Penn and Burmeister of defrauding him and misappropriating his cash and credit cards. He contends he did not know about their fraudulent acts until the fire, resulting in the misstatements to State Farm that ultimately led to its denial of coverage.

During State Farm's investigation, Barth made several misstatements but allegedly corrected them before or during his final examination under oath by State Farm. State Farm denied his claim

-2-

under an exclusionary provision in the policy voiding coverage if the insured intentionally concealed or misrepresented a material fact relating to the coverage either before or after a loss. Barth filed a three-count second amended complaint for breach of contract, unreasonable and vexatious delay and refusal to pay, and intentional infliction of emotional distress. State Farm filed three affirmative defenses: (1) the policy's "intentional act" provision; (2) the policy's "concealment or fraud" provision (second affirmative defense); and (3) set-off. Only the second affirmative defense is at issue in this appeal.

Prior to trial, the trial judge disclosed off-the-record that he was an insured of State Farm but did not recuse himself. Barth filed a motion for substitution of judge for cause under the catchall provision in Supreme Court Rule 63(C)(1) (210 Ill. 2d R. 63(C)(1)). The trial judge considered the motion as seeking his recusal and denied it. The motion for substitution was referred to another judge, who also denied it.

Following presentation of the evidence and the parties' closing arguments, the trial court gave the jury instructions on the element of materiality included in the policy's exclusionary clause but declined to give the instructions offered by Barth on the common law elements of reasonable reliance and injury. The jury returned a special verdict, finding in favor of State Farm's second affirmative defense because it had proved by clear and convincing evidence that Barth had concealed or misrepresented a material fact to Stare Farm either before or after the claim and that he had made the statement "knowingly, willingly, and with intent to deceive State Farm." Barth filed a posttrial motion seeking judgment notwithstanding the verdict (*n.o.v.*) or a new trial, but it was denied. He then filed a timely notice of appeal.

The appellate majority affirmed, relying on the analysis in *Passero v. Allstate Insurance Co.*, 196 Ill. App. 3d 602 (1990), and distinguishing *A&A, Inc. v. Great Central Insurance Co.*, 259 Ill. App. 3d 73 (1994). The majority concluded the insurer's second affirmative defense relied on the "concealment or fraud" provision of its policy and thus did not require proof of either reasonable reliance or injury. Therefore, the trial court did not abuse its discretion by failing to give jury instructions requiring the insurer to show

reasonable reliance or injury as Barth claimed. 371 Ill. App. 3d 498, 505.

The appellate majority also rejected Barth's claims that the trial judge erred by: (1) failing to recuse himself because he was a State Farm insured; (2) not requiring evidence that the insurer did not reasonably rely on the alleged misrepresentations and was not injured by them; and (3) denying Barth's motion for judgment notwithstanding the verdict. 371 Ill. App. 3d at 506-08. Finally, the majority held that the jury's verdict was not against the manifest weight of the evidence. 371 Ill. App. 3d at 509.

In his dissent, Justice Cook strictly construed the exclusionary clause against the insurer, applied the rationale in *A&A*, and factually distinguished *Passero*. 371 Ill. App. 3d at 509-10, 511-12 (Cook, J., dissenting). The dissent believed the jury instructions should have explained that misrepresentations were not material unless the insurer had a right to rely on them and they negatively affected State Farm's investigation. 371 Ill. App. 3d at 510, 512 (Cook, J., dissenting). Finally, the dissent concluded that the jury verdict was against the manifest weight of the evidence. 371 Ill. App. 3d at 513 (Cook, J., dissenting). We allowed Barth's petition for leave to appeal (210 Ill. 2d R. 315).

## II. ANALYSIS

Due to our disposition in this case, we need only address three issues raised on appeal, whether: (1) the jury should have been instructed that State Farm was required to prove injury or prejudice after justifiably relying on Barth's misrepresentations and omissions; (2) the trial judge erred by failing to recuse himself and the motion judge erred by denying Barth's motion for substitution for cause when the trial judge was a State Farm insured; and (3) the jury verdict was against the manifest weight of the evidence and the trial court erred by denying Barth's motion for judgment notwithstanding the verdict.

### A. Jury Instructions on Elements of Proof

Barth claims the jury should have been instructed that State Farm must have both reasonably relied on his misrepresentations and, as a result, suffered prejudice or injury to succeed on its second affirmative

defense, relying on an exclusionary provision in his homeowner's insurance policy. Barth asserts that without this requirement insurers may unfairly deny coverage due to an insured's alleged misrepresentations without proving all the elements of fraud. Requiring proof of reasonable reliance and injury will "level the playing field" between insurers and their insureds. In support of this claim, Barth offers two arguments: (1) *A&A, Inc. v. Great Central Insurance Co.*, 259 Ill. App. 3d 73 (1994), requires a jury instruction defining fraudulent misrepresentation; and (2) the exclusionary clause must be strictly construed against the insurer (*Outboard Motor Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 119 (1992)).

### 1. *A&A & Passero*

Barth argues that the jury instructions were insufficient to convey the correct law to the jury. Although jury instructions are generally reviewed for an abuse of discretion, our standard of review is *de novo* when the question is whether the applicable law was accurately conveyed. *People v. Pierce*, 226 Ill. 2d 470, 475 (2007). The primary instruction at issue here is State Farm's instruction no. 9, explaining the materiality requirement. The explanation of the law stated in that instruction is derived in large part from *Passero v. Allstate Insurance Co.*, 196 Ill. App. 3d 602, 608 (1990). In turn, *Passero* relied on a federal appellate case, *Fine v. Bellefonte Underwriter's Insurance Co.*, 725 F.2d 179 (2d Cir. 1984).

Barth contends that *Passero* and *Fine* are distinguishable and fail to support State Farm's argument. He asserts that *Passero* is distinguishable because it involved the homeowners' uncorrected proof of loss statement in a property theft claim and addressed materiality rather than reasonable reliance. Although *Fine* was a false-swearing case, as here, it did not involve reasonable reliance because the insured did not correct the misstatement before the insurer relied on it to its detriment. Here, the misstatements were corrected at or before the examination under oath. For this reason, Barth argues that this court should rely on *A&A, Inc. v. Great Central Insurance Co.*, 259 Ill. App. 3d 73 (1994), a false-swearing case where the trial court rejected the insured's instruction defining fraudulent misrepresentation.

In *A&A*, the policy provision voided the policy " 'if the Insured has concealed or misrepresented *** any material facts or circumstances concerning this insurance *** *or if the Insured shall make any attempt to defraud Great Central* either before or after the loss.' " (Emphasis added.) *A&A*, 259 Ill. App. 3d at 76. The insurer's second affirmative defense alleged that the plaintiff's recovery was barred due to its " 'misrepresentation of the subject matter of the insurance, *and* other conduct by which the insured *attempted to defraud the Defendant*.' " (Emphases added.) *A&A*, 259 Ill. App. 3d at 76. The jury affirmatively answered the special interrogatory on the insurer's defense, finding the plaintiff had committed fraud in presenting the insurance claim. *A&A*, 259 Ill. App. 3d at 78. Moreover, throughout the discussion of the jury instructions on the second affirmative defense, the court referred to "fraud," "defraud," and "fraudulent misrepresentation." *A&A*, 259 Ill. App. 3d at 81-83.

The presence of an express fraud defense intermingled with the simple concealment and misrepresentation defense creates a distinctly different situation than the case before us. The insurer's allegation of fraud in *A&A* was an integral and necessary part of the court's reasoning. Here, the policy exclusion and State Farm's second affirmative defense do not include express references to "fraud." The exclusion mentions "fraud" only in its heading, not in any of its substantive paragraphs. The text of the policy provision here is limited only to the first part of the provision in *A&A*, addressing concealment and misrepresentation. The reasoning in *A&A* provides little guidance in this case.

In *Passero*, however, the policy stated:

> " 'Concealment or Fraud.
>
> This policy is void if you intentionally conceal or misrepresent any material fact or circumstance, before or after loss.' " *Passero*, 196 Ill. App. 3d at 604.

Here, the essence of the policy exclusion is nearly identical:

> "**Concealment or Fraud:** This policy is void as to you ***, if you *** intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss."

Moreover, in both *Passero* and the instant case, the insurer discovered the misrepresentations before paying the filed claims in reliance on the misstatements.

On appeal, the Passeros argued that the misrepresentations were not material because they did not alter the insurer's conduct. This argument is similar to the one advanced by Barth, although the latter is couched in the common law fraud terms of "reasonable reliance" and "injury." The *Passero* court noted that "the definition of material misrepresentations is quite different in the realm of insurance law," with materiality being broadly defined in false-swearing cases since the United States Supreme Court's decision in *Claflin v. Commonwealth Insurance Co.*, 110 U.S. 81, 28 L. Ed. 76, 3 S. Ct. 507 (1884).

In *Claflin*, the Court stated that the insured had an affirmative obligation under the policy to answer accurately every question relevant to the insurer's investigation. Thus, willfully making a false statement, intended to deceive the insurer, was a breach of the policy conditions and barred the insured's recovery. *Claflin*, 110 U.S. at 96-97, 28 L. Ed. at 82, 3 S. Ct. at 516. The Court refused to consider the insured's personal reason for making the false statements, stating that the insured's lack of any intent to prejudice the insurer with its deception was "no palliation of the fraud." *Claflin*, 110 U.S. at 96-97, 28 L. Ed. at 82, 3 S. Ct. at 516. Similarly, in *Fine*, 725 F.2d at 183-84, the court reversed the trial court's finding that the plaintiff's false statements under oath were not material, reasoning that insureds are obliged to be truthful during claims investigations and holding that false misrepresentations are material if they were designed to discourage, mislead, or deflect the insurer's investigation at that time, regardless of whether the investigation revealed the actual facts. See also *Passero*, 196 Ill. App. 3d at 608-09.

Here, the materiality instruction offered by State Farm and given to the jury incorporates that reasoning:

> "A concealment, misrepresentation, or false statement is material if a reasonable insurer would attach importance to it at the time it was made. A reasonable insurer would attach importance to any fact or statement that would affect the insurer's action or attitude regarding a claim by an insured.

A concealment, misrepresentation, or false statement is material if it is calculated to discourage, mislead or deflect an insurer's investigation in any area that could be relevant to the insurer at the time of the investigation.

Whether a concealment, misrepresentation, or false statement is material does not depend on whether it relates to a matter that ultimately proves to be significant in the insurer's final disposition of the claim."

We hold that this materiality instruction is sufficient in the context of a policy provision voiding coverage if the insured "intentionally concealed or misrepresented any material fact or circumstance, before or after the loss." As Barth concedes in another portion of his brief, the materiality requirement necessarily "implies an element of prejudice." Moreover, the requirement implicates a reasonable connection between the insured's concealment, misrepresentation, or false statement and the insurer's actions or attitude in investigating the claim. Thus, the instruction adequately covers the fundamental concerns raised by Barth's argument about the need for a showing of reasonable reliance and injury to preclude any potential "mischief" by unscrupulous insurers. The exclusion at issue is not based on common law fraud and, thus, need not require all the elements of that tort to avoid injustice to insureds. The appellate majority properly affirmed the trial court's use of State Farm's materiality instruction.


## 2. Construing the Exclusion Against the Insurer

Barth also contends the exclusionary provision in his homeowner's policy did not specifically prohibit a requisite showing of reasonable reliance or injury, required to show common law fraud. He claims that strictly construing this provision against the insurer and in favor of coverage properly limits insurers' use of a fraud defense, particularly when, as in this case, the insured later corrects the misstatement.

An insurance policy is a contract, and its construction is reviewed *de novo* as a question of law. If the words used in the contract are unambiguous, we must give them their plain and ordinary meaning. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). Here, the exclusionary provision states:

"**Concealment or Fraud:** This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss."

While this provision does not specifically exclude the common law fraud elements of reasonable reliance and injury, it also does not attempt to define common law fraud. Notably, the term "fraud" is used only in the title and is not in the text of the exclusion. Nothing in the text purports to rely on common law fraud definitions, and we are not persuaded that those definitions may be properly imposed here. The language used unambiguously conveys the contours of the exclusion, and this court may not properly read into that language any additional terms. See 2 Couch on Insurance 2d §15:57, at 302 (rev. 1984) ("A contract different from that made by the parties cannot be read into the policy from the surrounding circumstances, such as the conduct of the parties, to give it either a more extensive or a more limited meaning than that expressed therein"). Thus, we reject Barth's argument that reading the exclusion against the insurer requires this court to add common law fraud elements into the policy when they are not specifically excluded.

## B. Recusal

Barth next contends that the trial judge erred by not recusing himself and that the motion judge erred in denying Barth's motion for substitution of judge for cause when the trial judge was an insured of State Farm. Barth relied on the catchall provision in Supreme Court Rule 63(C)(1), stating that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned," then listing several examples. 210 Ill. 2d R. 63(C)(1). He insists that, although the trial judge admittedly had only a *de minimus* economic interest in the insurance company, "the average person would say that a judge should not sit on a case involving any party with whom he does business." Thus, he argues that the business relationship created an appearance of impropriety. He asserts that his request for another judge was improperly denied and that the cause should be reversed and remanded for a new trial. We disagree.

When reviewing a trial judge's recusal decision, we must determine whether the decision was an abuse of the judge's discretion. *People v. Kliner*, 185 Ill. 2d 81, 169 (1998). Thus, we reject Barth's contention that we review this issue *de novo* as a question of law. Barth does not attempt to argue that the trial judge's *de minimus* economic interest in the case as an insured of State Farm provides an adequate basis for recusal or substitution for cause. Rather, he argues that it creates an appearance of impropriety requiring the judge to be disqualified under Supreme Court Rule 63(C)(1).

We note that although Barth correctly states that Rule 63(C)(1) creates "an objective test in the mind of a reasonable person," his argument repeatedly relies on his perception of how "an average person on the street" would view the relationship, confounding his purported "objective reasonable person" standard. We conclude that the test stated in Rule 63(C)(1) imposes an objective, reasonable person standard. As Rule 63(C)(1) states:

> "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might *reasonably* be questioned ***." (Emphasis added.) 210 Ill. 2d R. 63(C)(1).

This test mandates disqualification when a reasonable person might question the judge's ability to rule impartially.

In this case, we are not convinced that an objectively reasonable person might conclude that simply being insured by a large, nationwide insurance company while presiding over a case involving that company creates an appearance of partiality or impropriety. The personal choice to purchase coverage from a particular insurer depends on a wide variety of factors.

In this case, the only connection alleged between the trial judge and State Farm is that State Farm carried the judge's home and vehicle liability and casualty insurance, as well as his uninsured- and underinsured-motorist coverage. Under these circumstances, we cannot say that the trial judge abused his discretion by failing to recuse himself or that the motion judge erred by denying Barth's motion for substitution for cause. Thus, we affirm the appellate court's judgment upholding the trial judge's participation in the case.

## C. Sufficiency of the Evidence

Finally, Barth relies on virtually identical arguments to argue that the jury verdict was against the manifest weight of the evidence and that his motion for judgment notwithstanding the verdict should have been granted. He correctly notes the standard of review for a ruling on a motion for judgment *n.o.v.* This court must determine whether the evidence, when viewed in the light most favorable to the nonmovant, so overwhelmingly favors the moving party that no other verdict based on the evidence could stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967).

As the factual bases for his claims, Barth cites his physical and financial condition as well as his conduct during State Farm's investigation. At the time of the fire, he was 58 years old, wheelchair-bound, and required a ventilator because he had polio in his youth. Nonetheless, Barth states he was financially stable, with a net worth of over $70,000, with $44,000 in home equity and $27,000 in liquid assets. Barth argues that State Farm offered no "plausible theory" for why he would have been involved in the burning of his home over disputed credit card bills under these circumstances.

Barth contends instead he was victimized by two convicted felons, William Penn and William Burmeister, who misappropriated his credit cards as well as the cash he gave them to pay his bills. When he made the misstatements, he was unaware of the extent and full effect of those misappropriations. In addition, he simply forgot during his recorded statement to mention his American Express account, one of the credit cards misused by the two felons. He claims the error was timely corrected when he provided State Farm with a copy of his credit report noting the account and its balance. State Farm then deprived him of an opportunity to correct his prior omission orally by not asking about the account during his examination under oath. Similarly, Barth corrected his original statement that he could not get a cash advance the evening of the fire because he used the wrong PIN after he found out the real reason: Penn and Burmeister had overdrawn his card with fraudulent cash advances.

At his first recorded statement, Barth accurately told State Farm his satellite television service had been disconnected due to nonpayment. Barth also believed at that time that his mortgage payments were current because he did not yet know that Penn had

misused the money Barth had given him for the payment. Moreover, State Farm already knew from its contacts with Barth's bank that the mortgage payment was at least a month late. Barth claims that he was not required to prove who committed the arson and that State Farm did not meet the burden of proving its second affirmative defense. Based on this evidence and argument, Barth concludes that the jury's verdict was against the manifest weight of the evidence and that his motion for judgment *n.o.v.* the verdict should have been granted.

On the merits of these issues, State Farm counters that the materiality of Barth's statements and actions are questions of fact for the jury (*Passero v. Allstate Insurance Co.*, 196 Ill. App. 3d 602, 610 (1990)) and argues that additional evidence presented at trial supports the verdict.

The record reveals that, at the scene of the fire, the fire investigator from the sheriff's office immediately suspected arson and approached Barth, Penn, and Burmeister, who were in Barth's car. The three men indicated that they needed to leave because "they had some things to do," without identifying those "things." The fire investigator described Barth as "agitated" and "upset with somebody in the car" and "with everybody else around him." He did not interview Barth later due to restrictions imposed by Barth's attorney that the investigator believed were unacceptable.

The bank employee working on Barth's mortgage account also testified, stating that he began calling Barth about late payments in November 2002 and made numerous calls throughout that winter and spring. At the time of the fire on June 2, 2003, Barth was two months behind on his mortgage payments. He was also behind on his utility payments. In contrast, Barth told State Farm his financial situation had "stabilized" by that time, after he had experienced financial problems the prior fall.

Barth also misstated the status of his American Express account, opened in February 2003. He had authorized Penn to use the card for specific purchases at that time and knew Penn had not returned the card. Nonetheless, Barth did not make any payments on the account before the fire. Although American Express called him in late May about the large account balance, Barth did not mention the account in his June recorded statement. Moreover, Barth never reported any misuse of his credit cards to the police.

The special verdict submitted by the jury found, in relevant part, that State Farm proved by clear and convincing evidence that: (1) Barth "concealed or misrepresented a fact or circumstance, or made a false statement, relating to the insurance at issue *** or misrepresented any material fact to State Farm either before or after the claim"; (2) "the fact concealed or misrepresented, or the subject of the false statement, was material"; (3) "the concealment, misrepresentation, or false statement was made to State Farm or their agents"; (4) "the concealment, misrepresentation, or false statement was *made knowingly, willingly, and with intent to deceive State Farm*." (Emphasis added.)

To reverse a jury verdict as against the manifest weight of the evidence, we must find that: (1) it is unreasonable, arbitrary, and not based on the evidence; or (2) the opposite conclusion is readily apparent. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). Here, the evidence supports conflicting inferences about Barth's intentions in making the misrepresentations as well as about their materiality to State Farm's investigation. The jury is free to accept some evidence and reject others, as well as to determine the credibility of the witnesses and weigh their testimony. *Maple*, 151 Ill. 2d at 452. We cannot say that the jury's determination in this case was unreasonable, arbitrary, and not based on the evidence presented or that the opposite conclusion is readily apparent. Thus, the verdict was not against the manifest weight of the evidence and was properly affirmed by the appellate majority.

As for Barth's alternative argument that the trial court should have granted his motion for judgment *n.o.v.*, we note that the test for that claim is even more stringent. Under *Pedrick*, a court may not grant the motion unless the evidence, when viewed in the light most favorable to the nonmovant, so overwhelmingly favors the moving party that no other verdict based on the evidence could stand. *Pedrick*, 37 Ill. 2d at 510. Having already decided that the jury's verdict was not against the manifest weight of the evidence, we are confident that the appellate court did not err in affirming the trial court's denial of Barth's motion for judgment *n.o.v.*

## III. CONCLUSION

For the reasons stated, we hold that State Farm need not prove reasonable reliance or injury under the exclusionary provision at issue because it is distinguishable from an affirmative defense relying on common law fraud and that the materiality instruction given was sufficient to state the correct law to the jury. We also affirm the appellate judgment upholding the denial of Barth's motion seeking recusal or substitution of the trial judge for cause and his posttrial motion for judgment notwithstanding the verdict or a new trial.

*Affirmed.*