OPINION
{¶ 1} This appeal arises from an action brought in the Richland County Court of Common Pleas by plaintiffs/appellants/cross-appellees Abon, Ltd., Abon Cards Coins, Ltd., Star Collectors Ltd., and B B, Ltd., (collectively referred to as "Abon" or "Appellants") against defendant/appellee/cross-appellant Transcontinental Insurance Company ("Appellee").
 {¶ 2} Abon Ltd. submitted a fire loss claim to appellee for damage to the building, business, and personal property located at 115 Park Avenue West in Mansfield, Ohio. The fire occurred on March 30, 1999. Appellee received notice of fire on or about April 1, 1999. Appellees denied appellants' claim.
 {¶ 3} Abon filed its complaint on September 11, 2002, alleging that it was owed insurance proceeds from the fire loss pursuant to a policy of insurance issued by appellee. Abon also claimed appellee acted in bad faith in denying its insurance claim. Appellee filed its answer and denied that Abon was owed any money from the fire loss and asserted the affirmative defenses of arson, misrepresentation and lack of insurable interest.
 {¶ 4} On March 29, 2003, both parties moved for partial summary judgment. On August 4, 2003, the trial court issued an order regarding both motions. Essentially, the trial court dismissed Abon's bad-faith claim and appellee's lack of insurable interest affirmative defense. The trial court also ruled that Abon's losses exceeded the appellee's policy limits; therefore Abon did not need to prove damages at trial. The trial court granted summary judgment in favor of the appellees on appellants' claim for bad faith and punitive damages. Finally, the trial court denied appellants' motion for summary judgment on the arson defense.
 {¶ 5} On December 16, 2003, the matter came before the trial court for trial. At the close of appellee's case, Abon moved for a directed verdict on appellee's affirmative defenses of arson and misrepresentation. The trial court denied these motions.
 {¶ 6} Both parties rested on December 23, 2003 and the jury received the case the next day. Late in the afternoon of December 24, 2003, the jury returned a verdict in favor of appellee on its affirmative defense of misrepresentation. The jury could not reach a verdict on the arson issue.
 {¶ 7} Abon timely filed motions for judgment notwithstanding the verdict and a new trial. The trial court denied Abon's motions on February 19, 2004. Abon then filed the instant appeal raising the following nine assignments of error:
 {¶ 8} "I. The trial court erred in its ruling granting can's partial summary judgment motion on appellants' bad faith claim.
 {¶ 9} "II. The trial court erred in overruling appellants' motions for summary judgment and directed verdict regarding arson.
 {¶ 10} "III. The trial court erred in overruling appellants' motions in limine regarding prior fires and allowing this testimony to be admitted at trial.
 {¶ 11} "IV. The trial court erred in allowing at trial the expert testimony of james churchwell.
 {¶ 12} "V. The trial court erred in not excluding for cause juror thomas pollock.
 {¶ 13} "VI. The trial court erred in overruling appellants' moiton for directed verdict on the issue of misrepresentation.
 {¶ 14} "VII. The trial court erred in overruling appellnats' motion for new trial and judgment notwithstanidng the vrdict in the decision of post-trial motions entered on the 19th day of February, 2004.
 {¶ 15} "VIII. The trial court erred in granting appellee's motion in limine re: lack of criminal prosecution, filed on or about September 17, 2003.
 {¶ 16} "IX. The trial court erred by granting appellee's motion to open and close eivdence and final argument."
 {¶ 17} Appellee filed a cross-appeal raising the following three assignments of error:
 {¶ 18} "I. Abon ltd. lacked an insurable interest in the business personal property (inventory) and therefore cannot recover for loss to such property.
 {¶ 19} "II. The `property of others' provision did not `save' coverage for the damage to the investory.
 {¶ 20} "III. Cards coins, star, and bb were never insureds and lacked any standing to bring any claim arising from the policy."
 {¶ 21} The facts relative to this case are as follows.
 {¶ 22} Larry and Donna Bence are in the collectable and memorabilia business. The Bence's sell coins, sports cards and all types of pop culture memorabilia.
 {¶ 23} The Bence's formed various entities for their collectibles business for tax and accounting purposes. Abon, Ltd. owns the real estate located at 115 Park Avenue West, Mansfield, Ohio. [Hereinafter referred to as the "Abon Building."]
 {¶ 24} On March 30, 1999, business was conducted as usual at the Abon Building. At the end of the day, around 7:15 p.m., Mr. Bence closed the store, turned off the lights and locked the building. After Mr. Bence left the Abon building, he met his wife and friends for dinner at a local restaurant. After dinner, Mr. and Mrs. Bence went to visit Mr. Bence's mother at a nursing home in Ashland, Ohio. After concluding their visit around 10:00 p.m., Mr. and Mrs. Bence proceeded to their home in Ashland, Ohio. At approximately 2:00 a.m. the next morning, the Bence's received a phone call from the Mansfield Fire Department informing them that the Abon Building was on fire. The fire was discovered by the Mansfield Police who while on patrol heard an explosion at around 11:20 p.m. that evening.
 {¶ 25} Fire caused extensive damage to the second floor of the Abon Building. The dispute at trial concerned the origin of the fire. It was determined that the fire originated on the second floor in the vicinity of a fan, trouble light, extension cord and power strip. Almost the entire inventory that was contained on the second floor was destroyed. Appellee hired M.F. Bank to inventory the business personal property loss which occurred at the Abon Building. M.F. Bank stopped counting the inventory once it had reached the amount of $1,192,099.66.
 {¶ 26} Appellees retained its own independent fire investigator, James Churcwell, CFI, CPII of Churchwell Fire Consultants, Inc., who performed an extensive inspection and investigation of the fire and concluded that the fire originated on the second floor of the building, and that the fire was "incendiary in nature, having been deliberately set."
 {¶ 27} The box van, trouble light, extension cord and power strip found in the area of the origin of the fire were examined and analyzed by two professional electrical engineers retained by appellees. Samuel J. Sero P.E. of Renaissance Engineering examined the items recovered from the origin area and determined that none of these items caused the fire. Appellees also retained Daniel Santon, P.E. of Rudick Engineering, Inc. to examine the same items and provide a second independent opinion. Mr. Santon independently concluded that these items did not cause the fire. With all of the limited number of ignition switches in the origin area having been eliminated, Mr. Churcwell concluded that the fire was incendiary in cause.
 {¶ 28} During the course of its investigation, appellees interviewed Mr. Bence. It was determined that he was the last person in the building on the night of the fire and that he left alone. Mr. Bence turned off the lights, checked all the doors and made sure the building was locked up. Mr. Bence originally told appellee's investigator that he set the Sonitrol alarm system when he left the building on the night of the fire. Sonitrol alarm records provided to appellee showed that Mr. Bence had not set the alarm when he left that night. Those records further revealed only once in the previous six months had the alarm not been set from one business day to the next as occurred on the night of the fire.
 {¶ 29} The building also had a video surveillance system consisting of nine cameras that taped the first floor of the building. Mr. Bence ran three VCR's to which the surveillance cameras recorded, and used a different set of color-coded and labeled tapes for each day. When appellees investigators asked for the tapes, Mr. Bence was initially unable to provide them. However, during the course of its investigation appellee's learned that Mr. Bence himself had removed the "Tuesday tapes" the morning after the Tuesday night fire. Mr. Bence's daughter later found two of the "Tuesday tapes" in the closet of the family's home. Mr. Bence later provided to appellee's investigators three "Tuesday tapes" — the two his daughter had found and a third tape that was neither labeled with a day of the week, nor color coded like all of the other surveillance tapes that Mr. Bence used. When a third, unmarked tape was found to have programming that actually predated the fire, Mr. Bence claimed to have lost the third tape.
 {¶ 30} Appellees retained Rebul Henderson, Inc., a forensic accounting firm to examine the financial condition of the Bence's and their business. This investigation revealed that Mr. Bence was having financial problems around the time of the fire. The report of Joel Chenevey, CPA, submitted into evidence at trial, showed a steady decline in cash receipts for Mr. Bence's businesses during the fifteen months preceding the fire. Cash receipts during January to March, 1999, the three months immediately before the fire, decreased by more than 43 percent compared to the same three months to the prior year. Purchases showed a similar decrease, while monthly operating expenses had increased by some $27,000.
 {¶ 31} Based upon significantly declining sales and a negative cash flow over the months leading up to the time of the fire, Mr. Chenevey testified that the Bence's business entities were in poor financial condition around the time of the fire.
 {¶ 32} To refute this testimony Mr. Bence's accountant testified that the businesses were in sound financial condition. Mr. Bence additionally testified at trial that he kept nearly $100,000 in cash and gold bullion hidden in concrete blocks at his residence. This revelation first appeared on a report issued by appellants' accounting experts in August of 2002. When asked why he did not disclose these assets to appellees sooner, Mr. Bence responded that he was not asked specifically whether he had cash or gold in his home.
 {¶ 33} The appellee's investigation produced no tangible evidence of arson. Neither the Mansfield Police Department nor appellee's fire consultants found any evidence of an accelerant or any other type of device that would have intentionally set this fire. Appellee determined the fire was intentionally set by claiming it ruled out all accidental causes of the fire.
 I. II. {¶ 34} In their First Assignment of Error appellants maintain that the trial court erred in granting partial summary judgment in favor of appellee on appellants' "bad faith" claim. In their Second Assignment of Error appellants argues that the trial court erred in overruling appellants' motion for summary judgment on appellee's arson defense. We will address these assignments of error together.
 {¶ 35} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides the following, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 36} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259,674 N.E.2d 1164, citing Dresher v. Burt, 75 Ohio St.3d 280, 295,1996-Ohio-107, 662 N.E.2d 264.
 {¶ 37} To grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find after viewing the evidence in a light most favorable to the insured, that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim. Tokles v. MidwesternIndemnity Co. (1992), 65 Ohio St.3d 621, 630, 605 N.E.2d 936, 943, overruled in part on other grounds by Zoppo v. Homestead Ins. Co.
(1994), 71 Ohio St.3d 552, 554. To withstand a motion for summary judgment in a bad faith claim, an insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim. Id.
 {¶ 38} In proving an arson defense, there are three basic elements: (1) fire of an incendiary origin; (2) motive on the part of the insured; and (3) opportunity of the insured to cause the fire. Caserta v. AllstateInsurance Company (1983), 14 Ohio App.3d 167, 168, 470 N.E.2d 430;Hazelwood v. Grange Mut. Ins. Co., 3rd Dist. No. 0-04-01, 2005-Ohio-1090 at ¶ 5. Courts have long recognized that arson can be established in civil cases by circumstantial evidence. Arms v. State Farm Fire Cas.Co. (6th Cir. 1984), 731 F.2d 1245; Forrestwood Development Corp. v.All-Star Ins. Corp. (June 1, 1978), 8th Dist. No. 37186.
 {¶ 39} Based upon this standard, and our review of the evidentiary materials the trial court had before it in ruling upon the motions for summary judgment, we find that the trial court did not err in granting appellee's pretrial motion for summary judgment and in overruling appellants' motion for summary judgment. The evidentiary materials indicate that the facts underlying appellants' loss were subject to fair debate, and appellants failed to present any evidence that appellee had actual knowledge of a lack of a reasonable justification for refusing the claim or that appellee intentionally failed to determine whether there was any such justification.
 {¶ 40} In Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552,644 N.E.2d 397, the court reviewed a case where the insurer failed to pay a claim on fire damage to the insured's business establishment because the insurer believed that the insured had set the fire for the insurance money. At trial, the Zoppo plaintiff produced evidence that the insurance company failed to seriously explore leads that others had set the fire. Those leads included the following: (1) that Zoppo had ousted several men from his bar, who then threatened to burn the bar down, (2) that three weeks before the fire in question, there had been an attempt to set the bar on fire, (3) that two men whom Zoppo had ousted from his bar publicly bragged that they were responsible for the attempted fire, and (4) that one of those men also told a group of bar patrons that he had set the actual fire. The Zoppo plaintiffs additionally produced evidence that, despite these leads, and despite the fact that there appeared to be a break-in and robbery connected with the fire, the insurance company failed to locate key suspects, verify alibis (including Zoppo's), follow up with witnesses, or ask anything but cursory questions of suspects other than Zoppo. Finally, the Zoppo court noted that part of the insurer's denial of the claim was based on its belief that Zoppo had a motive to destroy the bar — financial gain. Zoppo purchased the bar six months before the fire for $10,000 and insured it for $50,000. Other information, either possessed by or readily discoverable to the insurer, however, undermined the reasonableness of the insurer's belief. The insurer's own initial underwriting report stated the building's market value as $95,798. Additionally, Zoppo had no debts and had actually made improvements to the bar before the fire. Id., 71 Ohio St.3d at 555-556,644 N.E.2d at 400.
 {¶ 41} In contrast to Zoppo, when the evidence is construed most favorably to the appellants in this case, there is nothing to justify a finding of bad faith.
 {¶ 42} Appellee Transcontinental presented evidence that it was reasonably justified in denying appellant's fire loss claim. First, the evidentiary materials demonstrate that there was a genuine dispute over the cause of the fire. As the trial court noted, appellee presented evidence from fire investigator James Churchwell, Rudick Engineering and Renaissance Engineering that concluded that the electrical devices found near the origin of the fire did not cause the fire and that the fire was incendiary in nature. The evidence also revealed that the building was locked at the time of the fire. Mr. Bence was the last known person in the building prior to the fire. The alarm system which would have detected intruders was not set the night of the fire by Mr. Bence. Mr. Bence had originally informed appellee that the alarm had been set prior to his exiting the building. However, the records from the security company established that the alarm had not been set. Mr. Bence further represented that he had forgotten to set the alarm on previous occasions. However, the records indicate that the night of the fire was the only night in the year before the fire that the alarm system was not activated. The building had a nine camera video surveillance system, which fed into three separate video recorders. Mr. Bence removed the videotapes after the fire, and claimed that he lost one tape. Although there were routes to get to the second floor without being detected by a video camera, the missing tape would potentially have captured the area of the first floor stairs leading to the second floor where the fire occurred. The slowest moving inventory was destroyed in the fire. The evidence was conflicting concerning the financial status of the business prior to the fire.
 {¶ 43} Appellants presented evidence that possibly a former employee had a motive and opportunity to set the fire. Further, appellants argued that there was no tangible evidence of arson. Finally, evidence was presented to provide Mr. Bence with an alibi at the time of the fire.
 {¶ 44} From this conflict of evidence it is abundantly clear that the material fact in dispute is whether or not the fire was caused by arson and whether or not Mr. Bence or someone acting on his behalf caused the fire. However, the very factual dispute that operated to get appellee's arson claim to the jury also operated to preclude appellants' bad faith claim. Stripped to the bare essentials, the central factual issue in the bad faith claim is whether or not appellee had a reasonable basis to deny appellants' claim.
 {¶ 45} As previously stated, many portions of the record tend to support appellee's belief that appellants had caused the fire. Thus, the evidence shows that the claim was, at the very least, "fairly debatable." See Tokles Son, Inc. v. Midwestern Indem. Co. (1992), 65 Ohio St.3d 621,630-631, overruled in part on other grounds by Zoppo. The evidence also demonstrates that reasonable minds could only conclude that appellee's decision was not arbitrary or capricious but was based upon a reasonable justification.
 {¶ 46} We agree with the trial court that evidence that creates an issue of fact on an arson defense is sufficient, so long as it is not fraudulent, to create the reasonable justification to defeat a bad faith claim.
 {¶ 47} Accordingly, appellants' First and Second Assignments of Error are overruled.
 III. {¶ 48} In their Third Assignment of Error, appellants maintains that the trial court abused its discretion in allowing appellee to present evidence of three prior fires for which Mr. Bence had collected fire insurance proceeds. We disagree.
 {¶ 49} Appellee argues that evidence of other fires was properly admitted under Evid.R.404 (b). The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v.Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the trial court abused its discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157. We must determine whether such discretion was abused in ruling that the probative value of such fires outweighed their potentially prejudicial effect. United States v. Czarnecki, 552 F.2d 698 (6th Cir.), cert. denied, 431 U.S. 939,97 S.Ct. 2652, 53 L.Ed.2d 257 (1977).
 {¶ 50} The evidence admitted in the case at bar consisted of testimony on cross-examination of Mr. Bence that in 1969 a beauty salon operated by him had caught fire. In 1975 a portable heater caused a fire at Abon Beauty Salon. Neither fire was the result of arson, and the insurers paid the claims without delay. A third fire occurred approximately fifteen years ago in the chimney in Bences' home. Mr. Bence was unable to recall whether he had made an insurance claim for this fire. (T. at 326-27).
 {¶ 51} In sustaining appellants' pre-trial motion in limine to exclude the evidence of the prior fires the trial court ruled "[t]he plaintiffs' 9-18-03 motion to exclude evidence of prior fires is sustained, except that defendant may offer evidence of previous fires for which plaintiff collected insurance benefits to demonstrate that [sic] plaintiff's familiarity with the fire insurance claims, as relevant to motive. A limiting instruction will be given at the time that evidence is offered, if either party requests the instruction." (Order on Pending Motions, filed November 26, 2003 at ¶ 3.). At trial the court gave the following limiting instruction prior to questioning concerning the previous fires: "[l]adies and gentlemen, this is a piece of evidence that comes in for a limited purpose. You are not to use this piece of evidence like this, the fact that he had a previous fire loss, to conclude that he's a bad man. It's used only for the limited purpose of showing his familiarity with the fact that fire loss claims can be made under a policy and the procedure for making fire loss claims. So understand that this is a limited purpose piece of evidence. Don't take it for more than it's worth . . ." (T. at 320).
 {¶ 52} With respect to appellant's argument under Evid.R. 403(A), we find that the probative value of appellee's' evidence was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. A jury is presumed to follow instructions given it by the court. State v. Henderson (1988),39 Ohio St.3d 24, 528 N.E.2d 1237.
 {¶ 53} Evidence of other fires is admissible in an arson case. Hammannv. Hartford Accident and Indemnity Co., (6th Cir. 1980), 620 F.2d 588;Dabash v. Royal Indemnity Company (July 15, 1982), 8th Dist. No. 43967. In Hammann the court stated "* * * the trial court properly instructed the jury that the fires were to be considered as bearing only on Hammann's motive. See Terpstra v. Niagara Fire Insurance Co., 26 N.Y.2d 70,308 N.Y.S.2d 378, 256 N.E.2d 536 (1970). Lastly, Hartford asserted the defense of incendiarism which included evidence of Hammann's intent or knowledge of the occurrence. See, e.g., Trice v. Commercial UnionAssurance Company, 397 F.2d 889 (6th Cir. 1968), cert. denied,393 U.S. 1018, 89 S.Ct. 623, 21 L.Ed.2d 563 (1969)". Id. at 588.
 {¶ 54} In the case at bar, the trial court properly gave the jury a limiting instruction that the evidence could only be used to show the familiarity of Mr. Bence with the fact that fire loss claims can be made under a policy and the procedure for making fire loss claims. The court found that because the affirmative defense of arson had been raised this evidence was admissible to show motive. A jury is presumed to follow instructions given it by the court. State v. Henderson (1988),39 Ohio St.3d 24, 528 N.E.2d 1237. The jury did not find in favor of appellee on the affirmative defense of arson.
 {¶ 55} Accordingly, appellants' Third Assignment of Error is overruled.
 IV. {¶ 56} In his Fourth Assignment of Error, appellants maintain that the trial court erred in admitting the expert testimony of James Churchwell regarding the cause and origin of the fire.
 {¶ 57} Appellant does not contest Churchwell's expert qualifications. Rather, appellant contends that his testimony did not comply with Evid.R. 702 because it was not based upon generally accepted investigatory and scientific principles and procedures and there was no evidence that his conclusions were based on valid and reliable information resulting from an adequate investigation. We disagree.
 {¶ 58} An extremely thorough and well researched analysis on the admissibility of scientific evidence in Ohio was conducted by the Fourth District Court of Appeals in Valentine v. Valentine (2001),158 Ohio App.3d 615, 2004-Ohio-4521, 821 N.E.2d 580, appeal allowed104 Ohio St.3d 1438, 2004-Ohio-7033, 819 N.E.2d 1122. In Valentine, the court noted: "[i]n general, courts should admit expert testimony whenever it is relevant and satisfies Evid.R. 702. State v. Nemeth (1998),82 Ohio St.3d 202, 207, 694 N.E.2d 1332; see, also, State v. Williams
(1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444. Thus, the trial judge must perform a `gatekeeping' role to ensure that expert testimony is sufficiently (a) relevant and (b) reliable to justify its submission to the trier of fact. See Kumho Tire, 526 U.S. at 152, 119 S.Ct. 1167,143 L.Ed.2d 238; Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993),509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469; Nemeth,82 Ohio St.3d at 211, 694 N.E.2d 1332; Douglass, 153 Ohio App.3d 350,2003-Ohio-4006, 794 N.E.2d 107, at ¶ 32.
 {¶ 59} "In performing its gatekeeping function, the trial court's starting point should be Evid.R. 702, which provides that a witness may testify as an expert if all of the following apply: `(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable, scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply: (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; (2) The design of the procedure, test, or experiment reliably implements the theory; (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.'
 {¶ 60} "Here the issue is whether appellant's experts' testimony `is based on reliable scientific, technical, or other specialized information. (Emphasis added.) Evid.R. 702(C). In general terms, the reliability of an expert's opinion depends upon (1) the validity of the underlying theory, (2) the validity of the technique used to apply that theory, and (3) the proper application of the technique on a particular occasion. In Daubert the United States Supreme Court identified a series of specific reliability inquiries that apply in the context of the `hard' or quantitative sciences. These factors include (1) whether a theory or technique can be and has been tested, (2) known error rates, (3) peer review and publication, and (4) general acceptance in the field.
 {¶ 61} "The court made it clear in Kumho Tire Co. that the reliability analysis adopted in Daubert for scientific experts also applied to experts with other types of technical or specialized knowledge. But it is critical to realize that the analysis of reliability is flexible and its indicators may vary from discipline to discipline. Daubert,509 U.S. at 593, 113 S.Ct. 2786, 125 L.Ed.2d 469; see, also, Moore v.Ashland Chem., Inc. (C.A. 5 1997), 126 F.3d 679, at 686-688. Thus, the court should proceed in a twostep process that first identifies the indicators of reliability that are appropriate for the discipline involved and then applies them. . . .
 {¶ 62} "In order to determine reliability, a court must assess whether the reasoning or methodology underlying the testimony is valid. Miller,80 Ohio St.3d at 611, 687 N.E.2d 735, citing Daubert, 509 U.S. at 592-593,113 S.Ct. 2786, 125 L.Ed.2d 469. Thus, an expert may not base an opinion upon `subjective belief or unsupported speculation.' Daubert,509 U.S. at 590, 113 S.Ct. 2786, 125 L.Ed.2d 469; see, also, State v.Hurst (Mar. 7, 2000), Franklin App. No. 98AP-1549, 2000 WL 249110. Instead, the expert's opinion must be based on methods and procedures that meet the level of intellectual rigor demanded by the relevant discipline. See In re: Paoli (C.A.3, 1994), 35 F.3d 717, 742, citingDaubert, 509 U.S. at 590, 113 S.Ct. 2786, 125 L.Ed.2d 469. The `[p]roposed testimony must be supported by appropriate validation — i.e., `good grounds,' based on what is known.' Daubert, 509 U.S. at 590, 113 S.Ct. 2786,125 L.Ed.2d 469. And `where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, * * * the trial judge must determine whether the testimony has a `reliable basis in the knowledge and experience of [the relevant] discipline.' `Kumho, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238, quoting Daubert, 509 U.S. at 592, 113 S.Ct. 2786, 125 L.Ed.2d 469; see, also, Daniel J. Capra, The Daubert Puzzle (1998) 32 Ga.L.Rev. 699, 705 (`In deciding the question of admissibility, trial judges must consider the degree to which the accuracy of scientific information has been established. The less certain the scientific community is about information, the less willing courts should be to receive it'). In other words, `[s]cientific evidence and expert testimony must have a traceable, analytical basis in objective fact before it may be considered on summary judgment.' Bragdon v. Abbott (1998), 524 U.S. 624, 653,118 S.Ct. 2196, 141 L.Ed.2d 540; see, also, Gen. Elec. Co. v. Joiner
(1997), 522 U.S. 136, 144-146, 118 S.Ct. 512, 139 L.Ed.2d 508. However, [t]he grounds for the expert's opinion merely have to be good [;] they do not have to be perfect. Paoli, 35 F.3d at 744.
 {¶ 63} "A court resolving a reliability question should consider the `principles and methods' the expert used `in reaching his or her conclusions, rather than trying to determine whether the conclusions themselves are correct or credible.' Nemeth, 82 Ohio St.3d at 210,694 N.E.2d 1332; see, also, Miller, 80 Ohio St.3d 607, 687 N.E.2d 735, paragraph one of the syllabus. As the Daubert court stated, in assessing reliability, `[t]he focus * * * must [generally] be * * * on principles and methodology, not on the conclusions that they generate.' Daubert,509 U.S. at 595, 113 S.Ct. 2786, 125 L.Ed.2d 469.
 {¶ 64} "A trial court may not, therefore, exclude expert testimony simply because it disagrees with the expert's conclusions. Instead, if the expert followed methods and principles deemed valid by the discipline to reach his opinion, the court should allow the testimony. See Paoli,35 F.3d at 742 (`an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable). The traditional adversary process is then capable of weeding out those shaky opinions. See Daubert, 509 U.S. at 596, 113 S.Ct. 2786,125 L.Ed.2d 469" Valentine, supra at 628-631; 2004-Ohio 4521 at ¶ 23-31, 821 N.E.2d at 628-631.
 {¶ 65} An appellate court should apply an abuse of discretion standard in reviewing a court's decision to admit or exclude expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).Gen. Elec. Co. v. Joiner (1997), 522 U.S. 136, 144-146, 118 S.Ct. 512,139 L.Ed.2d 508. We apply this standard and conclude that the trial court in this case did not abuse its discretion when it permitted Mr. Churchwell's testimony regarding the cause and origin of the fire.
 {¶ 66} The National Fire Protection Association 921 Guide for Fire and Explosion Investigations ("NFPA 921") is a peer reviewed and generally accepted standard in the fire investigation community. Royal Ins. Co. v.Joseph Daniel Const., Inc. (S.D.N.Y. 2002), 208 F.Supp. 423, 426;Travelers Property Cas. Corp. v. General Electric Co. (D. Conn. 2001), 150 F.Supp. 360, 366.
 {¶ 67} Section 16.2.5 of NFPA 921 recognizes the process of elimination and deductive reasoning as an appropriate methodology for determining the cause and origin of a fire: "* * * when the origin of a fire is clearly defined, it is occasionally possible to make a credible determination regarding the cause of the fire, even where there is no physical evidence of that cause available. This finding may be accomplished through the credible elimination of all other potential causes, provided the remaining cause is consistent with all known facts." With respect to incendiary fires, Section 16.2.5 of NFPA 921 further provides: "* * * the `elimination of all other causes other than application of an open flame' is a finding that may be justified in limited circumstances, where the area of origin is clearly defined and all other potential heat sources at the origin can be examined and credibly eliminated. It is recognized that in cases where a fire is ignited by the application of an open flame, there may be no evidence of the ignition source remaining."
 {¶ 68} The courts have also found deductive reasoning and the process of elimination to be credible, scientific evidence. Royal Ins. Co. v.Joseph Daniel Const., Inc., supra 208 F. Supp. At 427; Travelers Property Cas. Corp. v. General Electric Co., supra 150 F. Supp. at 366; Statev. Funk, 10th Dist. No. 00AP-1352, 2001-Ohio-4110 at *5; State v. Hinkle
(Aug. 23, 1996), 11th Dist. No. 95-P-0069.
 {¶ 69} In the case at bar, Churcwell followed methods and principles deemed valid by the discipline to reach his opinion. The testimony of Churchwell has a "`reliable basis in the knowledge and experience of [the relevant] discipline.'" Kumho, 526 U.S. 137, 119 S.Ct. 1167,143 L.Ed.2d 238, quoting Daubert, 509 U.S. at 592, 113 S.Ct. 2786,125 L.Ed.2d 469. Appellant's concerns about Churchwell's testimony go more to the weight of the evidence rather than to its admissibility.
 {¶ 70} Because of the nature of the crime, proof of arson must often rely heavily upon circumstantial evidence and the inferences one may draw from such evidence. State v. Funk, 10th Dist. No. 00AP-1352, 2001-Ohio-4110. Based primarily upon Churchwell's testimony, and focusing solely on his principles and methodology, not on the conclusions they generate, this court finds that Churchwell's opinion testimony meets the requirements of Rule 702 and Daubert. Although appellee had a great deal of material for cross-examination, the court finds that Churchwell's testimony is the product of reliable principles and methods. Churchwell's experience, knowledge and training, taken together with the process he described during the trial of analyzing the electrical devices that might have caused the fire and then ruling out potential alternative explanations, is sufficient to meet the Daubert threshold of admissibility.
 {¶ 71} Appellants' Fourth Assignment of Error is overruled.
 V. {¶ 72} In their Fifth Assignment of Error appellants argue that the trial court acted unreasonably and with prejudice when it failed to remove a prospective juror for cause. Specifically, appellants complain that prospective juror No. 16, admitted to the fact that a witness for the appellant, Chad Crider, had worked for the jurors' family business for two or three years and that Mr. Crider did not leave the business on amicable terms. The appellee argues that Juror No. 16 was rehabilitated during their questioning and therefore the trial court did not err in refusing to dismiss Juror No. 16.
 {¶ 73} The Supreme Court of Ohio has stated: "Trial courts have discretion in determining a juror's ability to be impartial. R.C.2313.42(J) contemplates that `good cause' exists for removal of a prospective juror when `he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court.' A prospective juror who has been challenged for cause should be excused `if the court has any doubt as to the juror's being entirely unbiased.' R.C. 2313.43. However, a `ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary * * * so as to constitute an abuse of discretion.' State v. Tyler (1990),50 Ohio St.3d 24, 31, 553 N.E.2d 576, 587" (Citations omitted.) State v.Nields (2001), 93 Ohio St.3d 6, 20-21, 752 N.E.2d 859.
 {¶ 74} Further, the Supreme Court of Ohio has indicated that because the trial court has the opportunity to observe the demeanor of the prospective juror and evaluate firsthand the sincerity of the responses to the questions, the trial court's position is of considerable significance in the appellate review of its decision. Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 75} A party cannot claim reversible error in the court's refusal to dismiss a juror for cause if the party has not first exercised all its peremptory challenges. State v. Getsy (1998), 84 Ohio St.3d 180, 191,1998-Ohio-533, 702 N.E.2d 866, 880; State v. Poindexter (1988),36 Ohio St.3d 1, 5, 520 N.E.2d 568, 572; Haslam v. Russell, 7th Dist. No. 03MO3, 2003-Ohio-6724 at ¶ 32; McGarry v. Horlacher (2002),149 Ohio App.3d 33, 39, 775 N.E.2d 865. In a civil case each party is entitled to three peremptory challenges. Civ.R. 47(B).
 {¶ 76} In the case at bar, appellants' counsel only utilized two peremptory challenges, and has therefore waived any error with regard to the court's failure to dismiss Juror No. 16 for cause. (1T. at 88).
 {¶ 77} Accordingly, appellants' Fifth Assignment of Error is overruled.
 VI. {¶ 78} In its Sixth Assignment of Error, appellants argue the trial court should have granted a directed verdict in its favor on the issue of misrepresentation. We disagree.
 {¶ 79} Pursuant to Civ. R. 50, a trial court must construe the evidence most strongly in favor of the party against whom the motion is directed, and if it finds that upon any determinative issue reasonable minds could come to but one conclusion on the evidence submitted, and this conclusion is adverse to the non-moving party, then the court shall sustain the motion and direct a verdict for the non-moving party as to this issue. The reasonable minds test calls upon the court only to determine whether there exists any evidence of substantial probative value in support of the claims of the party against whom the motion is directed, Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,671 N.E.2d 252. The motion for directed verdict raises a question of law because it examines the materiality of the evidence as opposed to the conclusions which may be drawn from the evidence, Ruta v.Breckenridge-Remy Company (1982), 69 Ohio St.2d 66, 23 OO 3d 115,430 N.E.2d 935. Because a motion for directed verdict presents a question of law, our standard of reviewing a trial court's judgment on a directed verdict is de novo, Titanium Industries v. S.E.A, Inc. (1997),118 Ohio App.3d 39, 691 N.E.2d 1087.
 {¶ 80} The insurance policy in the case at bar contains a provision that expressly voids the policy in the case of fraud or in the case of intentional concealment or misrepresentation of a material fact. This is not disputed by the parties on appeal. The question in this assignment of error is whether Mr. Bence made representations during the claims investigation process that justified voiding the policy. Three main areas are cited as the grounds for the misrepresentation claim: 1). Mr. Bence failed to provide one security videotape from the night of the fire; 2). Mr. Bence told the investigators that he had set the security code for the building's alarm system on the night of the fire; and 3). Mr. Bence did not disclose to the investigators that he had cash and gold bullion stored in his home at the time of the fire.
 {¶ 81} The materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact. See Turley v. State Farm Mut. Auto. Ins. Co., 944 F.2d 669,672 (10th Cir. 1991); Long v. Insurance Co. of N. Am., 670 F.2d 930, 934
(10th Cir. 1982). However, materiality "can be decided as a matter of law if reasonable minds could not differ on the question." Long,670 F.2d at 934; see also Claborn v. Washington Nat'l Ins. Co.,910 P.2d 1046, 1049 (Okla. 1996) (holding court should have directed verdict in light of undisputed evidence of material misrepresentation to insurer). Here, then, the question is whether reasonable minds could have differed as to the materiality of Mr. Bence's misrepresentations.
 {¶ 82} "[A] misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." Long, supra 670 F.2d at 934. Most courts have construed materiality broadly, emphasizing that the subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time. See Fine v.Bellefonte Underwriters Ins. Co., 725 F.2d 179, 182-84 (2d Cir. 1984) (holding materiality not judged by what facts later turn out to be, but whether a false statement "concerns a subject relevant and germane to the insurer's investigation as it was then proceeding," and holding false sworn answer material if it "may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate"); Dadurian v. Underwriters at Lloyd's, London,787 F.2d 756, 759-60 (1st Cir. 1986); Clark v. Aetna Cas. Sur. Co.,778 F.2d 242, 246 (5th Cir. 1985); Passero v. Allstate Ins. Co.,196 Ill.App.3d 602, 143 Ill.Dec. 449, 554 N.E.2d 384, 389 (1990);Longobardi v. Chubb Ins. Co., 121 N.J. 530, 582 A.2d 1257, 1262-63
(1990). {¶ 83} Misrepresentations regarding the insured's financial status, as well as statements concerning the setting of the alarm and the failure to provide all videotapes from the night of the fire, when there is a question about whether a fire is of incendiary origin, pertain to the material matter of whether the loss is covered under the policy, under the condition that the insured not have caused the fire in order to procure insurance benefits.
 {¶ 84} The evidence presented at trial indicated that a question of fact existed about whether Mr. Bence misrepresented and/or concealed facts concerning the videotapes of the day of the fire. Mr. Bence did not disclose to the investigator that the building had a video surveillance system. (T. at 1103). Mr. Bence removed the videotapes, but never reviewed the tapes. One of the three videotapes from the night of the fire was never found. In investigating a claim wherein arson is suspected, the existence of videotapes that might have shown the fire starting, or any person entering or exiting the building on the night in question is clearly material to the insurance company's investigation of the claim. Whether the videotape was innocently lost or deliberately concealed or destroyed was a question of fact for the jury.
 {¶ 85} The evidence presented at trial indicated that a question of fact existed about whether Mr. Bence misrepresented and/or concealed facts concerning whether he had set the alarm prior to leaving the building on the night in question. The evidence revealed that the building was locked at the time of the fire. Mr. Bence was the last known person in the building prior to the fire. The alarm system which would have detected intruders was not set the night of the fire by Mr. Bence. Mr. Bence had originally informed appellee that the alarm had been set prior to his exiting the building. However, the records from the security company established that the alarm had not been set. Mr. Bence further represented that he had forgotten to set the alarm on previous occasions. However, the records indicate that the night of the fire was the only night in the year before the fire that the alarm system was not activated.
 {¶ 86} "False sworn answers are material if they might have affected the attitude and action of the insurer. They are equally material if they may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate."Fine v. Bellefonte Underwriters Ins. (2nd Cir 1984), 725 F.2f 179, 184. The statements concerning setting the alarm impact upon whether a break-in had occurred, or whether someone entered the building subsequent to Mr. Bence's leaving the building. Not setting the alarm, if intentionally done, would also impact upon the affirmative defense of arson. Accordingly, sufficient evidence existed to submit the issue to the jury.
 {¶ 87} The evidence presented at trial indicated that a question of fact existed about whether Mr. Bence misrepresented and/or concealed facts concerning whether he had large sums of cash and gold concealed in the cement block of his home at the time of the fire. The evidence reveals that this revelation did not occur until the "eleventh hour" during the investigation. Mr. Bence's response as to why he did not reveal this information to the appellee early on in the investigation of the claim was that appellee did not specifically ask him whether he had gold bullion or cash at his home. Whether this representation was true or simply invented to counter appellee's evidence concerning Mr. Bence's motive to cause the fire was a question of fact for the jury.
 {¶ 88} Construing the evidence most strongly in favor of the appellants, this court finds that reasonable minds might well have arrived at different conclusions upon the issue of misrepresentation, and therefore they were questions of fact for the jury.
 {¶ 89} Appellant's Sixth Assignment of Error is overruled.
 VII. {¶ 90} In his Seventh Assignment of Error, appellants maintain that the trial court erred in overruling their motion for judgment notwithstanding the verdict. We disagree.
 {¶ 91} In Texler v. D.O. Summers Cleaners Shirt Laundry Co.
(1998), 81 Ohio St.3d 677, 693 N.E.2d 271, the Ohio Supreme Court reviewed Civ. R. 50(B) and stated: "[t]he standard for granting a motion for judgment notwithstanding the verdict or in the alternative for a new trial pursuant to Civ.R. 50(B) is the same as that for granting a motion for a directed verdict pursuant to Civ.R. 50(A). Wagner v. RocheLaboratories (1996), 77 Ohio St.3d 116, 121, 671 N.E.2d 252, 256, fn. 2, citing Gladon v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 318-319, 662 N.E.2d 287, 294; and Posin v. A.B.C.Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338. Civ.R. 50(A) (4) states:
 {¶ 92} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 93} "In Wagner, we quoted Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284-285, 21 O.O.3d 177, 178-179, 423 N.E.2d 467,469, in setting forth the standard for deciding a motion for a directed verdict or for a judgment notwithstanding the verdict:
 {¶ 94} "`The law in Ohio regarding directed verdicts is well formulated. In addition to Civ. R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. * * * Thus, `if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied.Kellerman v. J.S. Durig Co. (1964), 176 Ohio St. 320 [27 O.O.2d 241,199 N.E.2d 562] * * *.' Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 115 [ 4 O.O.3d 243, 244, 363 N.E.2d 367, 368].'"
 {¶ 95} "In Wagner, we stated that "`[t]he "reasonable minds" test of Civ.R. 50(A) (4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of [the claims of the party against whom the motion is directed]. * * * A motion for a directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence.' Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66,68-69, 23 O.O.3d 115, 116-117, 430 N.E.2d 935, 938." Wagner,77 Ohio St.3d at 119-120, 671 N.E.2d at 255-256." Id. at 679, 693 N.E.2d 679.
 {¶ 96} In the case at bar, the appellants' contentions with respect to this assignment of error mirror those set forth in Assignments of Error One through Six, supra. As the standard for granting a directed verdict and motion for judgment notwithstanding the verdict are the same, we overrule appellant's Seventh Assignment of Error for the reasons set forth in our disposition of Assignments of Error One through Six, supra.
 VIII. {¶ 97} In his Eight Assignment of Error, appellants maintain that the trial court erred in not permitting appellants to present evidence that there has been no criminal investigation, arrest, indictment and/or prosecution of Mr. Bence in connection with the arson fire and insurance claim. We disagree.
 {¶ 98} Appellants fail to cite where in the record this error is alleged to have occurred. According to App.R. 12(A) (2): "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
 {¶ 99} App.R. 16(A)(7) states that appellant shall include in his brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary." [Emphasis added].
 {¶ 100} An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. Hawley v. Ritley (1988), 35 Ohio St.3d 157, 159,519 N.E.2d 390, 392-393.
 {¶ 101} Accordingly, we find that appellant has failed to comply with App.R. 16(A).
 {¶ 102} Even if we were to review appellants' assignment of error, we would affirm the decision of the trial court.
 {¶ 103} On November 26, 2003, the trial court filed a Judgment Entry stating, in relevant part, "[t]he defendant's 9-18-03 motion to exclude evidence on the lack of criminal prosecution of plaintiffs for arson is sustained that plaintiffs may not offer evidence of non-prosecution. Evidence discovered in the Fire Department's investigation may be used at trial, however."
 {¶ 104} In their response to appellee's motion to exclude evidence on the lack of criminal prosecution of appellants for arson, appellants simply argued that the motion was too broad; appellants argued in the trial court that they should be permitted to introduce evidence concerning the Fire Department's investigation. The trial court concurred that appellants would be permitted to introduce evidence discovered in the Fire Department's investigation. Accordingly, appellants' assignment of error is without merit.
 {¶ 105} Appellants Eight Assignment of Error is overruled.
 IX. {¶ 106} In there Ninth Assignment of Error appellants maintain the trial court erred by allowing appellee to open and close the evidence at trial. We disagree.
 {¶ 107} Again, appellants fail to cite to the record to show where this error is alleged to have occurred. According to App.R. 12(A) (2): "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
 {¶ 108} App.R. 16(A)(7) states that appellant shall include in his brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary." [Emphasis added].
 {¶ 109} An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. Hawley v. Ritley (1988), 35 Ohio St.3d 157, 159,519 N.E.2d 390, 392-393. Accordingly, we find that appellant has failed to comply with App.R. 16(A).
 {¶ 110} Even if we were to review appellants' assignment of error, we would affirm the decision of the trial court.
 {¶ 111} On November 26, 2003, the trial court filed a Judgment Entry, which stated, in pertinent part; "[t]he defendant's 9-18-03 motion to open and close evidence and final argument is overruled".
 {¶ 112} Accordingly, appellants' Ninth Assignment of Error is overruled.
 {¶ 113} In light of our disposition overruling all of appellants' assignments of error, and in light of the jury finding in favor of appellee after the jury trial, we find that appellee's cross-appeal is thereby rendered moot.
 {¶ 114} For the foregoing reasons, the judgment of the Richland County Court of Common Pleas, Ohio, is affirmed.
Gwin, J., Boggins, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas, Ohio, is affirmed.